Jessica Lind MEEKS, Plaintiff–Appellee,

v.

COMPUTER ASSOCIATES INTER-
NATIONAL, a foreign corpora-
tion, Defendant–Appellant.

No. 92–2926.

United States Court of Appeals,
Eleventh Circuit.

March 7, 1994.

Christopher K. Kay, Richard A. DuRose, Orlando, FL, for defendant-appellant.

Patricia L. Strowbridge, Sharon Lee Stedman, Deciccio & Associates, P.A., Orlando, FL, for plaintiff-appellee.

Before DUBINA and CARNES, Circuit Judges, and MORGAN, Senior Circuit Judge.

CARNES, Circuit Judge:

In this sex discrimination case, Computer Associates appeals from a judgment based upon a jury verdict finding it liable under the Equal Pay Act (EPA), 29 U.S.C.A. § 206(d)(1), and upon a district court finding of liability for sex discrimination and retaliation in violation of Title VII, 42 U.S.C.A. §§ 2000e–2(a), 2000e–3(a). We affirm the part of the judgment based upon the EPA claim and reject Computer Associates' contention that the district court erred by limiting the evidence of comparators' salaries to those of the plaintiff's colleagues in the specific office where she worked. We also reject Computer Associates' contentions that there was insufficient evidence to support the jury's verdict on liability and damages. As for the two-component Title VII portion of the judgment, we affirm insofar as the retaliation claim is concerned. We reverse, however, on the sex discrimination claim, because the district court made no finding of intentional discrimination, and because it erroneously held that the jury's EPA verdict compelled it to enter a Title VII discrimination judgment for the plaintiff.

## I. BACKGROUND

### A. FACTS

Jessica Meeks was hired as a technical writer at Computer Associates' Maitland, Florida, facility in September 1988. The Maitland facility develops computer software for the banking industry and the technical writers prepare manuals to accompany the software. During 1988, Computer Associates added four technical writers and a supervisor at the Maitland facility. Of the four writers, two, Peter George and J.R. Arth, are male and two, Meeks and Susan Cain, are female. George transferred from a Computer Associates facility in Massachusetts, and the other three writers were new hires. In March 1989, Meeks inadvertently learned the salaries of her three co-workers. George was earning $35,000 per year (the same as his salary in Massachusetts); Arth $28,500; Cain and Meeks $24,500 each. Meeks' initial salary had been $23,500, but she had received a $1,000 raise in February 1989.

Meeks believed the salaries to be discriminatory and complained to her supervisor, Laverne Peter.

According to Meeks, her complaint resulted in ongoing harassment from Laverne Peter, including a series of fierce verbal confrontations. Meeks was placed on thirty days probation in September 1989, allegedly because of declining work performance and absenteeism. At the end of the probationary period, Peter asked Meeks to set out her goals for the ensuing thirty days. Meeks characterized the request as "obviously a continuation of harassment."

In November 1989, Meeks filed a complaint with the EEOC. In December, because she was pregnant and experiencing difficulties with her pregnancy, Meeks began to work at home. In March, she initiated this suit. In May 1990, Meeks returned to work after her maternity leave. Meeks maintains that shortly after her return to the office she was given an unjustified work evaluation, rating her performance as unsatisfactory. Later, Meeks decided to take some of her work product for use in her pending lawsuit. Apparently she had a change of heart and left the materials under a public stairwell at work, where they were found. Meeks was also absent on one occasion and failed to call until hours after she should have reported. After these events, Meeks was summoned to a meeting with Peter and Ron Nall, the general manager. Computer Associates issued Meeks a written warning but claims to have taken no other action. Meeks testified that she was called into Nall's office where Nall and Peter "proceeded to yell and scream. And, I mean, Ron was so close, he was in my face, his spit was flying in my face. He was leaning over, this big guy. I thought he was going [to] hit me." Meeks resigned in June 1990, shortly after this meeting. Meeks alleged a pattern of harassment that constituted constructive discharge in retaliation for complaining about the disparities in the technical writers' salaries, in violation of Title VII. 42 U.S.C.A. § 2000e–3(a).

### B. PROCEDURAL HISTORY

With the consent of the parties, the action was referred to a Magistrate Judge. *See* 28 U.S.C.A. § 636(c) (1993). The case went to trial on Meeks' claims that Computer Associates violated the Equal Pay Act by paying her less than her male colleagues and by retaliating against her for filing her claim with the EEOC and that Computer Associates had violated Title VII by discriminating against her on the basis of her gender and her pregnancy and by retaliating against her for having complained of the pay disparities. The EPA claim was tried to a jury while the Title VII claim was tried to the court simultaneously.

At trial, Computer Associates sought to introduce evidence of the salaries of the 116 technical writers it employs at its various offices. Meeks objected that the only relevant salaries were those paid to the Maitland technical writers. The district court sustained Meeks' objection, ruling that only Meeks' three colleagues at the Maitland facility were proper comparators.

The jury returned a special verdict:

Do you find from a preponderance of the evidence that the plaintiff and member or members of the opposite sex have been employed by the defendant on jobs the performance of which requires substantially equal skills, effort and responsibilities? Answer, Yes.

Do you find from the preponderance of the evidence that the plaintiff and member or members of the opposite sex have been employed by the defendant on jobs which were performed under similar working conditions? Answer, Yes.

Do you find from the preponderance of the evidence that the plaintiff was paid at a lower salary than a member of the opposite sex working as a technical writer at the Maitland office? Answer, Yes.

Do you find from a preponderance of the evidence that the defendant has shown that the difference in salary between plaintiff and the male technical writer(s) in the Maitland office was based upon a factor other than the plaintiff's sex? Answer, No.

Do you find from a preponderance of the evidence that the defendant retaliated

against the plaintiff for filing a complaint or charge for violation of the Equal Pay Act? Answer, Yes.

Do you find that the defendant constructively discharged the plaintiff? Answer, Yes.

What do you find from a preponderance of the evidence is the amount of damages plaintiff sustained, that is the amount plaintiff should have been paid less the amount she was actually paid by reason of her wage disparity from the date she was hired until her termination of June 13, 1990? Damages, $14,388.00.

The district court remitted the EPA damages to $13,371. The court held that Computer Associates had failed to show that it had acted in good faith and therefore awarded Meeks an equal amount ($13,371) in liquidated damages under 29 U.S.C.A. §§ 216(b) and 260. The court further found that Computer Associates had retaliated against Meeks for lodging her EPA complaint and awarded her another equal amount ($13,371) in liquidated damages under 29 U.S.C.A. § 215(b). Thus, Meeks' total award under the EPA was $40,113.

The court "consider[ed] itself bound by the jury's" EPA findings to conclude that Computer Associates had violated Title VII by engaging in gender-based wage discrimination. The court also specifically found that Computer Associates had retaliated against Meeks in violation of Title VII. The district court credited Meeks' expert's uncontroverted testimony that she had lost approximately $16,829 between the date of her constructive discharge and the date of judgment. The court also concluded, based on the expert's uncontroverted testimony, that Meeks "continues to suffer wage diminution, as a result of Defendant's pay discrimination, at an amount equal to $5,000 per year." The court awarded Meeks two years front pay differential or $10,000, for a total Title VII recovery of $26,829. The district court also ruled that Computer Associates did not discriminate against Meeks on the basis of her pregnancy; Meeks has not appealed this ruling.

## II. STANDARD OF REVIEW

We will affirm a jury's verdict if " 'the state of the proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict.' " *Deakle v. John E. Graham & Sons,* 756 F.2d 821, 827 (11th Cir.1985) (quoting *American Cas. Co. v. Myrick,* 304 F.2d 179, 182 (5th Cir.1962)). "[T]he jury's verdict should not be disturbed if there is competent evidence in the record to support it." *Id.*

We will affirm the trial court's findings of fact unless they are clearly erroneous. Fed. R.Civ.P. 52(a). Moreover, when, as here, those findings "are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings." *Anderson v. City of Bessemer City,* 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

## III. DISCUSSION

### A. THE EQUAL PAY ACT CLAIM

#### 1. The Definition of "Establishment": The Pay Comparators Used

The Equal Pay Act provides, in part:

No employer having employees subject to any provisions of this section shall discriminate, *within any establishment* in which such employees are employed, between employees on the basis of sex by paying wages to employees *in such establishment* at a rate less than the rate at which he pays wages to employees of the opposite sex *in such establishment* for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided,* that an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsec-

tion, reduce the wage rate of any employee.

29 U.S.C.A. § 206(d)(1) (emphasis added).

■ Computer Associates argues that "establishment" should be interpreted functionally, and that therefore the appropriate "establishment" for purposes of determining whether Meeks suffered gender-based discrimination is not Computer Associates' Maitland, Florida, facility but the company as a whole, i.e., all Computer Associates' technical writers throughout the nation. This is so, according to Computer Associates, because the company "retains the centralized control of personnel functions, salary administration and identity of work among the technical writers regardless of location." Job applicants are screened and interviewed by local supervisors who then recommend the applicants and a suggested salary to the central personnel office, which gives final approval. Computer Associates argues that, had the court permitted, it would have introduced evidence to establish that as of March 1, 1989, Computer Associates employed 116 technical writers, 36 men and 80 women. It further would have shown that the median salary for male technical writers was $36,375 and for female technical writers was $36,210. Computer Associates maintains that by limiting the comparison to the four writers at Maitland, the salary differences were exaggerated and the jury was prejudiced.

■ Under appropriate circumstances, multiple offices may constitute a single establishment for EPA purposes. *See, e.g., Marshall v. Dallas Indep. Sch. Dist.*, 605 F.2d 191, 194 (5th Cir.1979) (Wisdom, J.) (school district with 182 schools is a single establishment for EPA purposes); 29 C.F.R. § 1620.-9(b) (1993) ("[U]nusual circumstances may call for two or more distinct physical portions of a business enterprise being treated as a single establishment. For example, a central administrative unit may hire all employees, set wages, and assign the location of employment; employees may frequently interchange work locations; and daily duties may be virtually identical and performed under similar working conditions."). However, we presume that multiple offices are not a "single establishment" unless unusual circumstances are demonstrated. *See* 29 C.F.R. § 1620.9(a) (1993).

The district court found that Computer Associates lacked the degree of centralization necessary to justify admitting evidence concerning the salaries of non-Maitland based technical writers. Specifically, the court found that "the ultimate decision respecting the hiring of the two persons really in issue, male and female, plaintiff and Mr. Arth, was at the Maitland level considering the Maitland community and the office requirements." The evidence supports the trial court's ruling. Although Computer Associates centrally sets broad salary ranges, the specific salary to be offered a job applicant is determined by the local supervisor. Although personnel records are maintained centrally, job applicants are interviewed by local officials and hired upon their recommendation. The evidence proffered by Computer Associates does not demonstrate the level of centralization necessary to justify treating all of the company's technical writers as working at a single establishment. We therefore affirm the trial court's decision to limit the evidence to the salaries of the Maitland technical writers.

## 2. The Sufficiency of the Evidence

Computer Associates also challenges the sufficiency of the evidence underlying the jury's EPA verdict. Computer Associates makes two arguments. First, Computer Associates argues that it established its affirmative defense that the salary differentials were based on a factor other than sex, namely education, experience, and a computer industry personnel study. Second, Computer Associates argues that the jury erroneously relied on one of Meeks' expert witnesses, who testified that a nondiscriminatory starting salary for Meeks would have been $32,000. Computer Associates maintains that Meeks' expert "literally pull[ed] a number out of the air" and that he failed to consider the relationship between Meeks' salary and experience and the salaries and experience of George, Arth, or Cain in deriving the $32,000 figure. We address each of these contentions in turn.

#### a. As to Computer Associates' Affirmative Defense

██ To establish a *prima facie* case under the EPA, Meeks had to demonstrate that Computer Associates " 'pays different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." ' " *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1532 (11th Cir.1992) (quoting *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974) (quoting 29 U.S.C. § 206(d)(1))). The jury was entitled to find these requirements satisfied on the basis of Meeks' own testimony as well as that of George.

██ Once Meeks established a *prima facie* case, the burden shifted to Computer Associates to prove by a preponderance of the evidence that the pay differential was justified under one of the four affirmative defenses in section 206(d). A pay differential does not violate the EPA if it is the result of (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any factor other than sex. 29 U.S.C.A. § 206(d)(1). If the employer fails to convince the trier of fact, then the plaintiff wins. *Id.* at 1533. The risk of nonpersuasion is borne by the employer.

██ At trial, Computer Associates introduced testimony that starting salaries are based primarily on "experience, work experience, educational background, what a person is asking for, [and] salary surveys." Given its response to the special interrogatory about this affirmative defense, the jury obviously chose not to credit this testimony. "We will not override the jury's decision on the credibility of a witness." *Jones v. Otis Elevator Co.,* 861 F.2d 655, 658 n. 1 (11th Cir.1988) (citing *Boeing Co. v. Shipman,* 411 F.2d 365, 375 (5th Cir.1969)). The jury's finding of liability stands.

#### b. As to Damages

██ Computer Associates also argues that Dan Jones, one of Meeks' expert witnesses, erroneously determined that a nondiscriminatory starting salary in 1988 for Meeks would have been $32,000. According to Computer Associates, Jones did not compare Meeks' salary with those of the male technical writers at Computer Associates' Maitland office based on their respective skills, education, and experience.

The record shows that Jones did testify concerning the relative experience and salaries of Meeks, George, and Arth. Thus, there was sufficient evidence from which the jury could determine Meeks' EPA damages. Jones also discussed a 1988 salary survey prepared by the Society for Technical Communication, an industry trade association. In determining that $32,000 would have been an appropriate salary, Jones was asked to take all of the above factors into consideration. We have grave doubts about the propriety of using such a survey—which canvassed salaries of non-Computer Associates technical writers working elsewhere than Maitland, Florida—to determine a nondiscriminatory salary for Meeks, especially when the district court had already ruled that the appropriate "establishment" for EPA purposes was Computer Associates' Maitland facility. However, Computer Associates did not object to the introduction of the salary study in evidence, nor to Jones' reliance upon it in arriving at the $32,000 figure. Because no complaint was ever made to the district court, there is no ruling for us to review and the jury's EPA damage award, as modified by the district court, is affirmed.

### B. THE TITLE VII CLAIM

██Computer Associates argues that in ruling on the Title VII claim, the district court erroneously held itself to be bound by the jury's findings on the EPA claim. Computer Associates maintains that a violation of the EPA is not, *per se,* a violation of Title VII. Even if Meeks made out a *prima facie* EPA case, Title VII requires proof of the additional element of discriminatory intent, which Computer Associates claims is lacking.

We have previously held that the Supreme Court's disparate treatment cases, such as *McDonnell Douglas Corp. v. Green,* 411 U.S.

792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), provide "the appropriate framework for evaluating [a] claim of gender-based wage discrimination" under Title VII. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1528 (11th Cir.1992). The *McDonnell Douglas/Burdine* framework requires a Title VII plaintiff to establish an intent to discriminate on the part of her employer. *EEOC v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1570 (11th Cir.1993); *Miranda*, 975 F.2d at 1529. Because the district court did not make a finding of intentional discrimination, either explicitly or implicitly, we must reverse its judgment for Meeks on her Title VII wage discrimination claim.

■ Under the *McDonnell Douglas/Burdine* approach, a female Title VII plaintiff establishes a *prima facie* case of sex discrimination by showing that she occupies a job similar to that of higher paid males. *Miranda*, 975 F.2d at 1529. Once a *prima facie* case is established, the defendant must articulate a "legitimate, non-discriminatory reason for the pay disparity." *Id.* (citing *Burdine*, 450 U.S. at 255–56, 101 S.Ct. at 1095). This burden is "exceedingly light"; the defendant must merely proffer non-gender based reasons, not prove them. *Id.* (quoting *Perryman v. Johnson Prod., Inc.*, 698 F.2d 1138, 1142 (11th Cir.1983)). Once such a justification is advanced, the plaintiff must demonstrate by a preponderance of the evidence that the employer had a discriminatory intent. In other words, the plaintiff must show that "a discriminatory reason more likely than not motivated [the employer] to pay her less." *Id.* (citing *Burdine*, 450 U.S.

at 256, 101 S.Ct. at 1095). Such proof may be direct or circumstantial. *Reichhold Chem.*, 988 F.2d at 1564 (citing *Smith v. Horner*, 839 F.2d 1530, 1536 (11th Cir.1988)); *see also St. Mary's Honor Center v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993) ("[R]ejection of the defendant's proffered reasons [for disparate treatment], will *permit* the trier of fact to infer the ultimate fact of intentional discrimination...." (emphasis in original)).[1]

In contrast to Title VII, the EPA establishes a form of "strict liability":

> Once the disparity in pay between substantially similar jobs is demonstrated, the burden shifts to the defendant to prove that a "factor other than sex" is responsible for the differential. If the defendant fails, the plaintiff wins. The plaintiff is not required to prove discriminatory intent on the part of the defendant.

*Miranda*, 975 F.2d at 1533; *accord Fallon v. Illinois*, 882 F.2d 1206, 1213 (7th Cir.1989). Thus, there is a significant difference between Title VII and the EPA as to both elements and burdens of proof. Under the EPA, the onus is on the employer to establish that the pay differential was premised on a factor other than sex. Under Title VII, however, the plaintiff must prove that the employer had a discriminatory intent. If the evidence is in equipoise on the issue of whether a salary differential is based on a "factor other than sex," the plaintiff is entitled to judgment on her EPA claim. However, the employer prevails on the Title VII claim. Under Title VII, the risk of nonpersuasion always remains with the plaintiff. *See Hicks*, —— U.S. at ——, 113 S.Ct. at 2747 (quoting Fed.R.Evid. 301). Although sharply

---

1. Our holding in *Miranda*, 975 F.2d at 1518, has been modified slightly by the Supreme Court's 1993 decision in *Hicks*, —— U.S. at ——, 113 S.Ct. at 2742. In *Miranda* we held that the plaintiff could satisfy her Title VII burden by proving *either* that "a discriminatory reason more likely than not motivated [her employer] to pay her less, *or* that [the employer's] explanation is not worthy of belief." 975 F.2d at 1529 (emphasis added) (citing *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095). In *Hicks*, however, the Supreme Court held that only a finding of intentional discrimination will satisfy the plaintiff's burden of proof under Title VII. —— U.S. at ——,

113 S.Ct. at 2749. "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Id.* However, although " '[n]o additional proof of discrimination is *required* '" to support a finding of intentional discrimination, *id.* (quoting *Hicks v. St. Mary's Honor Center*, 970 F.2d 487, 493 (8th Cir.1992) (emphasis added) (bracketed material in original)), "rejection of the defendant's proffered reasons" does not *compel* judgment for the plaintiff as a matter of law. *Id.*

divided, the majority of circuits to address this issue have held, as we did in *Miranda,* that the elements and burdens of proof differ under the EPA and Title VII. *See Tidwell v. Fort Howard Corp.,* 989 F.2d 406, 410–12 (10th Cir.1993) (affirming district court's Title VII finding for the defendant despite jury's EPA verdict for the plaintiff); *Fallon,* 882 F.2d at 1213 & n. 5; *Peters v. City of Shreveport,* 818 F.2d 1148, 1154–55 & n. 3 (5th Cir.1987) (holding that "[t]he burden of persuading the court that the differential was due to the city's intentional sex discrimination remained with the plaintiffs as to the Title VII claims," although the burden under the EPA may shift to the defendant (citing *Plemer v. Parsons–Gilbane,* 713 F.2d 1127, 1136 (5th Cir.1983))), *cert. dismissed,* 485 U.S. 930, 108 S.Ct. 1101–02, 99 L.Ed.2d 264 (1988); *Brewster v. Barnes,* 788 F.2d 985, 992–93 (4th Cir.1986) (affirming district court's findings for plaintiff on EPA claim and for defendant on Title VII claim due to difference in burdens of proof). *But see Korte v. Diemer,* 909 F.2d 954, 959 (6th Cir.1990) ("We find the distinction drawn by the district court between [EPA] liability and Title VII liability overly technical."); *McKee v. Bi–State Dev. Agency,* 801 F.2d 1014, 1019 (8th Cir.1986) ("Where a claim is for unequal pay for equal work based upon sex, the standards of the [EPA] apply whether the suit alleges a violation of the [EPA] or of Title VII."); *Kouba v. Allstate Ins. Co.,* 691 F.2d 873, 875 (9th Cir.1982) ("[E]ven under Title VII, the employer bears the burden of showing that the wage differential resulted from a factor other than sex. Nothing in *Burdine* converts this affirmative defense ... into an element of the cause of action...." (citation omitted)); *see also* 29 C.F.R. § 1620.27(a) (1993) (providing that when the jurisdictional requirements of both the EPA and Title VII are satisfied, "any violation of the Equal Pay Act is also a violation of Title VII"). However, having reviewed these decisions and the relevant Supreme Court precedent, we are convinced that our decision in *Miranda* not only binds us on this issue but has the added merit of being correct.

In this case, the EPA jury returned a special verdict:

Do you find from a preponderance of the evidence that the defendant has shown that the difference in salary between the plaintiff and the male technical writer(s) in the Maitland office was based on a factor other than the plaintiff's sex? Answer, No.

The jury found that Computer Associates had not established its affirmative defense, and therefore Meeks was entitled to recover on her EPA claim. In ruling on the Title VII claim, the district court relied on the jury's EPA verdict. However, the jury had found only that Computer Associates had failed to prove that the salary differential was based on factors other than sex, which is all that the EPA requires. The jury did not find that Meeks had proven that the salary differentials *were* based on gender and that the discrimination was intentional, both of which Title VII requires. *See Fallon,* 882 F.2d at 1213 n. 5. Neither the jury nor the district court expressly found that Computer Associates had intentionally discriminated against Meeks on the basis of her gender. In the absence of such a finding, the court's judgment in favor of Meeks cannot stand.

The Supreme Court's decision in *Hicks* reinforces our holding that the jury's EPA findings neither require nor support the district court's ruling for Meeks on her Title VII claim. Even if we were to accept Meeks' invitation to treat the jury's finding as establishing that she had disproved Computer Associates' proffered justifications, we would still have to reverse Meeks' Title VII wage discrimination judgment. As *Hicks* makes clear, the trier of fact *must* make a finding of intentional discrimination. *See* — U.S. at ——, 113 S.Ct. at 2751 ("[N]othing in law would permit us to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its action was not believable."). In this case, the district court never made a finding of intentional discrimination. The court may have believed that Meeks proved intent, but it did not so find, and its findings are therefore insuffi-

cient under *Hicks* to support its Title VII wage discrimination judgment.[2]

On remand, the district court will have the opportunity to enter additional findings of fact as it deems appropriate. If the district court finds that Meeks did not prove intentional sexual discrimination, it should recalculate her Title VII damages accordingly. If, however, the court finds that she did prove intentional discrimination, it should reinstate its total damages award.

## C. RETALIATION UNDER TITLE VII

■ Computer Associates also contends that the district court erroneously found retaliation in violation of Title VII simply because the jury had found retaliation under the EPA. It argues that the evidence presented at trial was insufficient to support a finding of retaliation.

■ The shortcomings of the district court's Title VII discrimination ruling do not affect its conclusion that Computer Associates retaliated against Meeks in violation of Title VII. Retaliation is a separate offense under Title VII. *See* 42 U.S.C.A. § 2000e–3(a); *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491 (11th Cir.1989). To recover for retaliation, the plaintiff "need not prove the underlying claim of discrimination which led to her protest," so long as she had a reasonable good faith belief that the discrimination existed. *Tipton*, 872 F.2d at 1494.

■ To establish a *prima facie* case of retaliation, the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events. *EEOC v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571–72 (11th Cir.1993); *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1524 (11th Cir.1991); *Tipton*, 872 F.2d at 1494. As we explained in *Reichhold Chem.*, we interpret "the causal link requirement broad-

ly; a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." 988 F.2d at 1571–72 (citing *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir.), *cert. denied*, 474 U.S. 981, 106 S.Ct. 385, 88 L.Ed.2d 338 (1985)). Once the *prima facie* case is established, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action. As with a Title VII discrimination claim, the employer's burden is "exceedingly light." *Tipton*, 872 F.2d at 1495 (internal quotation omitted). The plaintiff must then demonstrate that the employer's proffered explanations are a pretext for retaliation; "the burden of production shifts, but the burden of persuasion remains with the plaintiff." *Reichhold Chem.*, 988 F.2d at 1572.

In this case, the district court specifically found that Meeks had carried her burden:

> [T]his Court finds retaliation. Specifically, this Court finds the testimony of the Plaintiff regarding the existence and nature of retaliatory conduct by her supervisor and that it commenced after her complaint regarding unequal pay to be credible. Conversely, the Court finds the testimony of the Plaintiff's supervisor, Laverne Peter, not to be credible on these points.

The court also expressly found that Meeks had been constructively discharged. Thus, the district court concluded that Meeks had engaged in protected conduct (she had complained of unequal pay); that adverse employment action had occurred (the court credited Meeks' testimony as to the *nature of retaliatory conduct* and found that she had been constructively discharged); and that the two were related. The court expressly found that Computer Associates' proffered explanations were not credible and that Meeks' testimony was credible. Taken as true, Meeks' testimony supports the district court's findings of constructive discharge and retaliation. The district court's ruling on

---

**2.** Under the Civil Rights Act of 1991 § 102, 42 U.S.C.A. § 1981a(c) (Supp.1993), Title VII sex discrimination claims seeking compensatory or punitive damages may now be tried to a jury at the election of one of the parties. In cases in

which a Title VII and an EPA claim are simultaneously tried to the jury, the district court should take care to instruct the jury on the differences in the elements and burdens of proof between the two causes of action.

this issue was therefore not clearly erroneous and must be affirmed.[3]

## IV. CONCLUSION

Because the district court failed to make a finding of intentional discrimination, we RE-VERSE the district court's judgment for Meeks on her Title VII wage discrimination claim, VACATE the district court's Title VII damage award, and REMAND for the entry of any additional findings of fact and for reinstatement or recalculation of the damages award consistent with this opinion. All other aspects of the district court's judgment are AFFIRMED.

---

**3.** Computer Associates makes three additional arguments: first, that the district court erred in awarding Meeks liquidated damages for a non-good faith violation of the EPA; second, that the district court erred in awarding Meeks liquidated damages *and* post-judgment interest; and third, that Meeks did not satisfy the Title VII jurisdic-tional requirement of obtaining a right to sue letter from the EEOC. Having reviewed these issues we conclude that Computer Associates' arguments are without merit and do not warrant further discussion.

