[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 2, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-10208
Non-Argument Calendar

_____

D. C. Docket No. 02-00267-CV-3-RV

ROOSEVELT WOODS,

Plaintiff-Appellant,

versus

ESCAMBIA COUNTY UTILITIES AUTHORITY,

Defendant-Appellee,

A E VANDEVER,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(September 2, 2005)**

Before ANDERSON, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Roosevelt Woods appeals the district court's grant of summary judgment in favor of Escambia County Utilities Authority ("ECUA") on his retaliation claim brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e).[1] For the following reasons, we affirm.

## I. Background

ECUA is a local government body which owns, manages, and finances the water and wastewater systems of Escambia County, Florida. Woods, an African-American male, began working for ECUA in 1988 as a clerk. In 1994, he was promoted to a position as a risk management and safety officer. Between 1995 and 1999, Woods received evaluations which alternatively noted that he needed improvement in communication, but that his performance was good or excellent. In February 2000, Donna Calhoun became Woods's supervisor, and Executive Director A.V. VanDever instructed Calhoun to ensure the development and implementation of a safety program. Accordingly, Calhoun advised Woods that he should develop a safety program and gave him a deadline to prepare a draft.

---

[1] Woods raised other claims below, including a Title VII race discrimination claim and a race discrimination claim under 42 U.S.C. § 1983. The district court granted summary judgment to ECUA on these claims as well. On appeal, Woods provides no argument as to how the district court erred in resolving these other claims. Therefore, he has abandoned these other issues. Rowe v. Schreiber, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998).

With VanDever's approval, Calhoun outsourced some of Woods's responsibilities so that he could focus on the safety program. This change in duties did not alter Woods's title or pay. To check Woods's progress, Calhoun and VanDever further determined that it was necessary to conduct more frequent special evaluations.

In March 2000, Calhoun reprimanded Woods for insubordination and unacceptable conduct towards another employee. Shortly thereafter, Woods was suspended for neglect of duty for allegedly failing to return a customer's phone call. In April 2000, Woods was again suspended for neglect of duty, this time for failing to complete a draft program by the deadline. Woods disputed the allegations and met with VanDever to express his concern that Calhoun was out to "get" him.

In response to Woods's concern, VanDever transferred Woods's supervision to Ernest Dawson, an African-American male. Dawson supervised Woods for sixty days, during which time he informed Woods that he should focus on developing the safety program and gave Woods detailed instructions for doing so. According to Dawson, Woods did not complete the assignments by the due dates, and Dawson suspended Woods in May 2000 for neglect of duty. At the end of the sixty days, Dawson informed Woods that he would be submitting a special evaluation of his work performance and that Woods would be reassigned to

3

Calhoun.

On July 28, 2000, Woods filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). After Woods filed his charge, he received Dawson's special evaluation which noted that his performance needed improvement in communication, quality, productivity, initiative, and safety. When Dawson submitted his special evaluation, he did not know that Woods had filed an EEOC charge. Woods returned to Calhoun's supervision and Calhoun completed other special evaluations in September and November 2000, which again gave Woods low marks.

In December 2000, ECUA terminated Woods for poor performance.[2] In Woods's amended complaint[3], he alleged, *inter alia*,[4] that he was terminated in retaliation for his July 2000 EEOC complaint. The district court granted summary judgment to ECUA, reasoning that Woods had failed to establish a prima facie case of retaliation. Woods now appeals.

---

[2] After his termination, Woods filed a second charge with the EEOC.

[3] The initial complaint named both ECUA and Executive Director A.V. Vandever as defendants. After ECUA moved to dismiss and for summary judgment, Woods amended his complaint, naming only ECUA and dropping certain claims.

[4] As discussed supra in note 1, Woods raised other issues in his amended complaint which are not before us on appeal.

## II.  Standard of Review

We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the party opposing the motion.  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990).

## III.  Discussion

To establish a prima facie case of retaliation under Title VII, the plaintiff must show that (1) he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that there is some causal relation between the two events.  Cooper v. Southern Co., 390 F.3d 695, 740 (11th Cir. 2004).[5]

Woods filed his initial EEOC complaint in July 2000 and was terminated in

---

[5] If a plaintiff establishes a prima facie case, then the burden shifts to the employer to proffer a legitimate nondiscriminatory reason for the adverse employment action.  If the employer does so, the plaintiff then bears the burden of demonstrating that the employer's proffered reason was a pretext for retaliation.  Meeks v. Computer Associates Int'l., 15 F.3d 1013, 1021 (11th Cir. 1994).

December 2000. The district court properly found that the four-month time span between the filing of the EEOC complaint and Woods's termination was not sufficiently close to raise any inference of a retaliatory motive and, therefore, that Woods failed to demonstrate a prima facie case of retaliatory termination. See Wascura v. City of South Miami, 257 F.3d 1238, 1244-45 (11th Cir. 2001). On appeal, Woods does not quarrel with the district court's rejection of his retaliation claim based on his termination. Instead, he argues that his retaliation claim is also based on other adverse employment actions that occurred after he filed his EEOC charge but before his termination. Specifically, he points to the following: (a) the alleged reclassification of his job and (b) the special performance evaluations. We consider each in turn.

Woods's argument that the reclassification of his position constituted retaliation fails because he does not show that this amounted to an adverse employment action. "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000). Other conduct that "falls short of an ultimate employment decision must

meet 'some threshold level of substantiality...to be cognizable under the anti-retaliation clause.'" Id. In determining that level of substantiality, we have stated that "Title VII[] is neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.'" Id.

Here, ECUA requested that the Civil Service Board reclassify Woods's position, but that request was denied. To the extent that any "unofficial" reclassification occurred, it did not reduce Woods's title or pay or otherwise affect his status. Some of Woods's duties were outsourced, but that was to enable him to concentrate on other aspects of his job such as the safety program. Woods does not explain how any reclassification that occurred amounted to an adverse employment action, other than to proffer his own conclusory allegations, which are insufficient to meet his burden. Accordingly, he failed to establish a prima facie case of retaliation based on a reclassification of his job.

Likewise, Woods fails to establish a prima facie case of retaliation based on the special evaluations. Although the issuance of the special evaluations may amount to an adverse employment action, Woods cannot show a causal connection between the evaluations and the filing of his EEOC charge. Woods's initial special performance evaluation occurred before he filed his EEOC charge. Although it is true that Woods received his second special evaluation after filing his EEOC

7

complaint, Woods was told by Dawson several weeks prior to filing his EEOC complaint that Dawson would be preparing a special evaluation covering his temporary 60-day assignment to Dawson. Moreover, Dawson was unaware of Wood's EEOC complaint when he prepared the evaluation. Finally, the evidence does not support an inference that the later two evaluations issued after he filed his EEOC complaint were in retaliation for that complaint. As the district court explained:

> In the five months prior to the plaintiff's July 28th, [sic] EEOC complaint, the plaintiff had received one written reprimand, was suspended three times, received one poor performance evaluation, was transferred to another supervisor due to problems, and received repeated notice that his failure to develop a satisfactory safety program was unacceptable. All of this preceded the plaintiff's filing of an EEOC complaint. Therefore, it is not surprising that the defendant continued to closely monitor and evaluate the plaintiff's work efforts after he filed the complaint.

Thus, Woods failed to establish a prima facie case of retaliation based on the special evaluations.

For the foregoing reasons, Woods failed to demonstrate a prima facie case of retaliation. Accordingly, we AFFIRM the district court's grant of summary judgment.

AFFIRMED.

8