[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 21, 2012
JOHN LEY
CLERK

_____

No. 10-15106

_____

D. C. Docket No. 5:06-cv-01208-SLB

KENDRA HALL,

Plaintiff-Appellee,

versus

SIEMENS VDO AUTOMOTIVE,

Defendant-Appellant.

_____

No. 10-15107

_____

D. C. Docket No. 5:06-cv-01208-SLB

KENDRA HALL,

Plaintiff-Appellant,

versus

SIEMENS VDO AUTOMOTIVE,

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

(June 21, 2012)

Before EDMONDSON, ANDERSON and FARRIS,[*] Circuit Judges.


PER CURIAM:


This case involves alleged pay discrimination. Claims under Title VII of the Civil Rights Act and the Equal Pay Act ("EPA") are involved.

Plaintiff -- a black woman -- became an employee of Defendant when Defendant purchased the plant at which Plaintiff worked. At the time of the purchase, Plaintiff's salary was lower than comparable white male employees. This discrepancy continued even after Plaintiff complained to Defendant, began receiving raises, and brought this action alleging several pay-discrimination-related claims. A jury returned a verdict finding gender-based pay discrimination

---

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

in violation of Title VII and the EPA. The district court denied judgment as a matter of law and entered judgment against Defendant. We affirm.

BACKGROUND

Plaintiff Kendra Hall ("Hall") is a black woman hired by DaimlerChrylser in 1998 to work as an engineer at a plant in Huntsville, Alabama. In the Spring of 2004, the Huntsville plant was sold to Defendant Siemens VDO ("Siemens"). At the time of the sale, Plaintiff was a Quality Planner and was making approximately $54,000 annually. As part of the Huntsville plant purchase, Siemens agreed to maintain the salary of all legacy employees at the plant for one year from the date of transfer. Plaintiff was covered by this promise. Her annual salary remained approximately $54,000 through the Spring of 2005 when Siemens announced a plant-wide raise.

Spring 2005 marked the first time Plaintiff complained to Siemens about her compensation. Plaintiff told Siemens that she was the lowest paid Quality Planner and complained that she was the only Quality Planner being paid according to "Grade 8" instead of "Grade 9" on the salary scale.

Siemens conducted an investigation in response to Plaintiff's complaints. That Plaintiff's pay differential had no reasonable basis in the Spring of 2005 is undisputed. Shortly after the investigation, Plaintiff was given an almost ten percent raise and was upgraded to "Grade 9." (Siemens also began a Performance Improvement Plan ("PIP") for Plaintiff that was designed to address alleged deficiencies in Plaintiff's performance. The deficiencies carried the potential for Plaintiff to be terminated. Plaintiff completed the PIP without serious incident or consequence.) After these steps were taken, Plaintiff was being paid approximately $61,000 annually.

Even after these corrective acts by Siemens, Plaintiff complained to management that she was still paid less than other Quality Planners. She then filed an Equal Employment Opportunity Commission ("EEOC") action in November 2005 and this civil action in June 2006. The parties agree that raises -- approaching ten percent annually -- were given to Plaintiff after the filing of the EEOC action and were continued after the filing of this civil action. By trial, Plaintiff's annual salary was approximately $78,000.

Plaintiff's civil complaint alleged these discriminatory violations: discrimination on race and gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1); discrimination based on race in

violation of the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("section 1981"); and discrimination in pay in violation of the EPA, 29 U.S.C. § 206(d)(1).  The complaint also alleged other violations: retaliation in violation of Title VII; intentional infliction of emotional distress in violation of Alabama state law; and negligent training/hiring/retention in violation of Alabama state law.  Defendant moved for summary judgment, and the district court granted summary judgment to Defendant on several of Plaintiff's claims.  The discrimination claims were allowed to proceed.

In preparation for trial, the district court rejected a motion in limine filed by Defendant that focused on admission of information about the PIP.  At trial, the court sustained Batson[1] challenges to two of Defendant's peremptory challenges of potential jurors.

At the end of the trial, the jury returned a verdict finding no race discrimination, but finding liability for gender-based pay discrimination under Title VII and the EPA.  Defendant's motions for judgment as a matter of law were then denied, and the district court entered judgment for $58,000 against Defendant.

---

[1]Batson v. Kentucky, 106 S. Ct. 1712 (1986).

DISCUSSION

Defendant contends that the district court erred in not granting judgment as a matter of law on the gender discrimination claims, that the district court erred in sustaining the Batson challenges, and that the district court abused its discretion in allowing certain evidence at trial. Plaintiff cross-appeals, contending that the grant of summary judgment on the Title VII retaliation claim was error.

I.

Siemens contends that the district court's denial of judgment as a matter of law on the gender discrimination claims was error. Siemens asserts that it is not responsible for the discriminatory pay differential created by Chrysler and that no reasonable juror could have found that Siemens discriminated against Plaintiff on the basis of gender in the light of Siemens's behavior after taking over the plant, including giving Plaintiff several raises after she complained about her comparative pay.

Siemens contends that the differential in pay between Plaintiff and other personnel continued after the purchase of the Huntsville plant not because of gender

discrimination on Siemens's part, but rather because of a "factor other than sex:" Siemens's internal raise and promotion policies.[2] These pay and promotion policies capped the raise percentage available to personnel -- like Plaintiff -- who did not change jobs within Siemens: capped at ten percent annually. Siemens argues that, once the pay differential was brought to its attention, it made concerted efforts within the constraints of the policies to correct the differential by granting Plaintiff raises that were at -- or closely approached -- the maximum allowable.

While the corrective process took several years, Siemens stresses that the large total raise given to Plaintiff over this period and the proximity of the raises to the top of the allowed range indicate that Siemens, after taking over the Huntsville plant, was not committing gender discrimination in continuing to pay Plaintiff less than similarly situated male personnel.

We review the denial of a motion for judgment as a matter of law de novo. Russell v. N. Broward Hosp., 346 F.3d 1335, 1343 (11th Cir. 2003). We will reverse the denial of a motion for judgment as a matter of law only when no legally sufficient evidentiary basis exists for a reasonable jury to find against the moving party and the facts and inferences available in the record point so overwhelmingly in favor of the

---

[2]The parties dispute when these policies came into effect; 2005 or 2006. The written policies carry a January 2006 date, but Siemens contends that the policies were given to the Huntsville plant and put into effect during 2005.

moving party that reasonable people could not arrive at a contrary verdict. See

Ledbetter v. Goodyear Tire & Rubber Co., Inc., 421 F.3d 1169, 1177 (11th Cir.

2005).

In the light of the facts, Siemens's position does not require the grant of

judgment as a matter of law to Siemens on either of Plaintiff's gender discrimination

claims.

## A.

Title VII makes it unlawful for an employer to "discriminate against any

individual with respect to [their] compensation ... because of such individual's

race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). We

have established a multi-step burden-shifting method for analyzing Title VII

gender discrimination claims. We have said that "a female Title VII plaintiff

establishes a prima facie case of sex discrimination by showing that she occupies a

job similar to that of higher paid males." Meeks v. Computer Assocs. Int'l, 15

F.3d 1013, 1019 (11th Cir. 1994). Upon establishment of a prima facie case of sex

discrimination, the burden shifts to the defendant to articulate a legitimate, non-

discriminatory reason for the pay disparity. Id. This burden is not a heavy one;

and upon articulation of a non-gender based reason, the plaintiff must demonstrate by a preponderance of the evidence that the employer had a discriminatory intent in perpetuating the pay disparity. Id.

Siemens does not contest that a pay differential existed. For judgment as a matter of law to be demanded on Plaintiff's Title VII gender discrimination claim, Siemens would need to establish that -- based on the record -- no reasonable jury could have believed that a discriminatory reason was more likely than not the motivation for Siemens perpetuating the pay differential. The record does not demand such a conclusion.

Among other evidence in the record, the evidence about the PIP -- including evidence about the motivation for the PIP -- combined with the conflicting evidence about the effective date of Siemens's raise policies, the length of time it took Siemens to remedy the pay differential, and Siemens's having hired or internally promoted several male quality planners at higher salaries than Plaintiff's during 2005 and 2006 is sufficient to allow a jury determination that Siemens acted with discriminatory intent.

B.

The EPA prohibits gender-based compensation discrimination where men and women are paid different amounts for equal work, in equal jobs, under similar working conditions -- except where the discriminatory payments are made pursuant to seniority, merit, or quantity-based compensation systems, or are "based on any other factor other than sex[.]" 29 U.S.C. § 206(d)(1). Unlike Title VII, "the EPA establishes a form of 'strict liability'" because it does not require discriminatory intent and because the burden is on the defendant to prove that the demonstrated disparity in pay is the result of "a factor other than sex." See Meeks, 15 F.3d at 1019.

For judgment as a matter of law to be demanded on the EPA claim, Siemens would need to have established -- based on the record -- that no reasonable jury could have disbelieved Siemens's proffered "factor other than sex" explanations for the pay differential between Plaintiff and male employees performing equivalent jobs. The record does not demand such a conclusion.

Among other evidence in the record, Siemens's hiring of male personnel at higher salaries for equal jobs combined with the evidence discussed in analyzing Plaintiff's Title VII gender discrimination claim allows a jury determination that

Siemens's "factor other than sex" explanations were not the cause of the differential treatment of Plaintiff.

## II.

Siemens also contends that the district court erred during jury selection by preventing, on Batson grounds, Siemens from using its final peremptory challenge -- and a later-provided replacement challenge -- against two black venire members: only three black people were prospective jurors. Siemens chiefly argues that the district court did not follow the proper procedure in applying Batson to the peremptory challenges in question and that these errors demand the grant of a new trial.

Briefly stated, Batson and its progeny establish a three-step process for analyzing equal protection challenges to a party's attempted use of peremptory strikes during jury selection. See, e.g., Central Alabama Fair Housing Center, Inc. v. Lowder Realty Co., Inc., 236 F.3d 629, 636 (11th Cir. 2000). First, a prima facie case of discrimination must be established to the trial court's satisfaction. Second, after a prima facie case has been found, the party making the peremptory strike has the opportunity to offer a non-discriminatory explanation for the

11

challenged strike. Third, the trial court -- looking at any proffered non-discriminatory explanation and at the facts establishing the prima facie case -- must determine whether purposeful discrimination motivated the challenged strike. See Batson, 106 S. Ct. at 1724; United States v. Hill, 643 F.3d 807, 837 (11th Cir. 2011); Lowder, 236 F.3d at 636.

The determinations a district court makes in resolving Batson challenges are largely based on perceived credibility and context; and so a district court's Batson determination "must be sustained unless it is clearly erroneous." Hill, 643 F.3d at 837-38. When reviewing the resolution of Batson challenges, "we give great deference to the district court's finding as to the existence of a prima facie case," United States v. Stewart, 65 F.3d 918, 923 (11th Cir. 1995); and once a prima facie case has been found, the determination on a challenged strike's actual motivation is treated as "pure factfinding." United States v. Walker, 490 F.3d 1282, 1291 (11th Cir. 2007).

We keep in mind all the relevant circumstances, including the subject matter of the case being tried. And we appreciate the trial judge (an experienced fact finder) watched the jurors as they replied to the questions put to them. We see no reversible error in the district court's handling of the Batson challenges in this case. The establishment of a prima facie case of discrimination to the satisfaction

12

of the district court is the chief concern of the first <u>Batson</u> step. The district court here did find -- explicitly in one instance and implicitly in another -- that a <u>prima facie</u> case of discrimination was present in both contested strikes. Siemens's explanations were rejected. Siemens made no timely objection to the process the District Court was following: no statement to the district court to assist the court regarding the best procedure to follow or to highlight the lack (as Siemens sees it) of a complete explanation provided for finding a <u>prima facie</u> case of discrimination and disallowing the strikes. No new trial is required on these facts.

III.

Siemens's final assertions of error are that the district court abused its discretion (1) in allowing evidence about the PIP to be presented after the dismissal of Plaintiff's retaliation claim and (2) in limiting certain parts of Siemens's cross-examination of Plaintiff.

We review district court rulings on admissibility of evidence for abuse of discretion. <u>Corwin v. Walt Disney Co.</u>, 475 F.3d 1239, 1249 (11th Cir. 2007). The district court was well within its discretion in making the decisions in

question and committed no reversible error in making the evidentiary decisions that it made.

# IV.

In her cross-appeal, Plaintiff asserts that the grant of summary judgment to Siemens on Plaintiff's Title VII retaliation claim was error. Establishment of a prima facie case of retaliation under Title VII requires a plaintiff to show these things: (1) that plaintiff engaged in activity protected under Title VII; (2) that plaintiff suffered an "adverse employment action;" and (3) that the "adverse employment action" was causally connected to the protected activity. Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008); see also Brown v. Ala. Dep't. of Transp., 597 F.3d 1160, 1181-1182 (11th Cir. 2010).

Hall contends that she engaged in protected activity beginning in 2005 when she complained about her pay disparity and that the implementation of the PIP, her transfer to a different supervisor, being sent on business to Mexico, and the solicitation of negative comments about her work from co-workers were all "adverse employment actions" taken in direct response to her protected activity.

Summary judgment is demanded on Plaintiff's retaliation claim because the record fails to indicate a sufficient "adverse employment action."

CONCLUSION

We see no reversible error.

Judgment as a matter of law was properly denied on the gender discrimination claims, the resolution of the <u>Batson</u> challenges produced no reversible error, the district court's evidentiary decisions were no abuse of discretion, and summary judgment was properly granted on the Title VII retaliation claim.

AFFIRMED.