William C. FELTON, et al., Plaintiffs,

v.

The CITY OF AUBURN,
et al., Defendants.

CA No. 96–D–0385–E.

United States District Court,
M.D. Alabama,
Eastern Division.

Jan. 17, 1997.

James Mendelsohn, Ann K. Wiggins, Maury S. Weiner, Laura Hitt, Birmingham, AL, for Plaintiffs.

Arnold W. Umbach, Jr., Opelika, AL, John W. Hargrove, Birmingham, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

This matter is now before the court on Defendants' motion for summary judgment filed on October 31, 1996.[1] The Defendants also filed a brief in support of their motion on the same day. Plaintiffs filed a response brief on November 15, 1996.

After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that defendant's motion for partial summary judgment is due to be granted in part and denied in part.

### JURISDICTION

Based upon 28 U.S.C. §§ 1331, and 1343, the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

### FACTUAL BACKGROUND

The Plaintiffs are four black firefighters employed by Auburn and the Fire Department. Plaintiffs William C. Felton ("Felton"), Dexter Card ("Card"), and Jesse J. Strickland ("Strickland") are Fire Department Lieutenants. Plaintiff Christopher E.

---

1. Defendants in this action include the City of Auburn ("Auburn"), the City of Auburn Fire Department ("Fire Department"), and numerous individuals who occupy positions of authority within the Fire Department or Auburn administration.

Turner ("Turner") is a Fire Department Fire Fighter.

Auburn and the Fire Department have been involved in a series of employment lawsuits which dealt with various employment law violations including racial discrimination. The initial action brought in 1987 resulted in a consent decree promoting Felton, Card, and Strickland to the rank of lieutenant and the hiring of Turner as a firefighter. The consent decree was modified in 1991 and provides procedures for many of the Fire Department's important personnel policies including promotions, sick leave, and physical fitness requirements. Most recently, in a memorandum opinion and judgment entered on July 1, 1994, this court dismissed an action brought by three Fire Department employees including Card.

In this action, the Plaintiffs contend that the policies implemented pursuant to the consent decree were applied in such a way that disadvantaged blacks. Specifically, the Plaintiffs allege that the Fire Department's promotion process, sick-leave policy, provisions for training classes and seminars, disciplinary procedures, and enforcement of educational requirements were applied in a discriminatory manner. In their motion for summary judgment, the Defendants ask the court to find as a matter of law for the Defendants on that portion of the Plaintiffs' claim concerning the Fire Department's promotion policies and sick leave policy. The motion also asks the court to dismiss the individual Defendants claiming that these Defendants are improper parties to the suit.

The Plaintiffs filed a response brief in opposition to the Defendants' motion arguing that the portion of their claim dealing with the promotion and sick leave policies should be presented to the jury. The Plaintiffs' brief also voluntarily dismisses the individual Defendants.[2] Therefore, the Defendants' motion for partial summary judgment on that portion of the Plaintiffs' claim arising from the Defendants' promotion and sick leave policies is the only remaining motion before the court.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

**2.** Therefore, future references to the Defendants pertain only to Auburn and the Fire Department.

*Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

### DISCUSSION

■ Plaintiffs bring a claim of race discrimination under 42 U.S.C. § 1983 alleging disparate treatment, disparate impact,[3] and retaliation. Plaintiffs base their § 1983 claim upon the Defendants' alleged violation of 42 U.S.C. § 1981 and restriction on the Plaintiffs' right to equal protection of the laws as secured by the Fourteenth Amendment. In the Eleventh Circuit, a prima facie claim for a § 1983 claim challenging racial discrimination is established in the same manner as a prima facie claim of racial discrimination under Title VII.[4] *See Lee v. Conecuh County Bd. of Educ.,* 634 F.2d 959, 962 (5th Cir. Jan.1981). Therefore, the court

will evaluate the Plaintiffs' promotion and sick leave claims using the traditional burden shifting Title VII analysis.

■ The Plaintiffs claim that they were discriminated against during the Fire Department's 1994 and 1996 promotion procedures. In 1994, Strickland and Card participated in the Fire Department's assessment center in the hopes of securing a promotion to the rank of captain.[5] However, Strickland and Card were rated last and second to last, respectively, out of nine candidates and were not promoted. Strickland and Card cite their consistently satisfactory job performance ratings and praise that they received while temporarily working in the position of captain, as evidence that their low assessment rankings were motivated by discriminatory animus. The Defendants argue that the assessment center process was administered in a nondiscriminatory manner and, further, that there is absolutely no evidence of discrimination or score falsification.

■ To establish a prima facie case for a claim of discriminatory failure to promote, a plaintiff must show:

(1) [He] is a member of a protected minority; (2) [he] was qualified for and applied for the promotion; (3) [he] was rejected despite those qualifications; and (4) other equally or less qualified employees who were not members of the protected minority were promoted.

*Batey v. Stone,* 24 F.3d 1330, 1334 n. 11 (11th Cir.1994). The Defendants contend that Strickland and Card were unqualified for the position of captain as shown by their poor performance during the assessment center, while Strickland and Card contend that these poor ratings demonstrate the Defendants' discriminatory practices. Based upon the satisfactory ratings received while serving as

---

**3.** Although the Plaintiffs mention disparate impact in their amended complaint, the court can find no evidence or arguments supporting disparate impact claims relating to the Defendants' promotion or sick leave policies. Therefore, the court finds that the Plaintiffs have failed to state a disparate impact claim on the promotion and sick leave portions of their claim and evidence dealing with this theory as it relates to these two policies should not be presented to the jury.

**4.** The Defendants do not dispute that they were acting under "color of state law."

**5.** The assessment center program is managed by an outside consultant and was one of the new procedures initiated as a result of the Fire Department consent decree.

lieutenants and praise from co-workers, the court finds that Strickland and Card were qualified to serve as Fire Department Captains. The court further finds that both Strickland and Card have satisfied their prima facie burden.

■ Upon the court's finding that Strickland and Card have satisfied their prima facie cases, the burden then shifts to the Defendants, who must produce evidence that the employment decision was motivated by legitimate, non-discriminatory reasons. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the Defendants meet this burden, the presumption created by Strickland and Card's prima facie case drops out of the litigation, and Strickland and Card bear the ultimate burden of persuasion that Defendants' proffered legitimate, non-discriminatory reason is a mere pretext for discrimination. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The Defendants claim that Strickland and Card were not promoted because of their poor assessment center performance and the court finds that this explanation satisfies Defendants' burden of production.

■ Therefore, Strickland and Card must persuade the court that the Defendants' proffered rationale is a pretext to mask intentional discrimination. Strickland and Card argue that their low ranking during the 1994 assessment center is evidence of the Defen-

dants' discriminatory intent. They base their argument on their consistently satisfactory performance ratings, their performance while temporarily acting as captains, and the fire chief's involvement in the assessment center process.

■ While the court acknowledges that this evidence is relevant to this action, it is not enough to provide evidence of intentional discrimination. *See Howard v. BP Oil Co. Inc.,* 32 F.3d 520, 525 (11th Cir.1994). The court can find no suggestion of any racially discriminatory animus in this evidence. The evidence suggests only that the Plaintiffs were qualified for promotion and that Fire Department officials were involved in the promotion process. The court finds that a reasonable finder of fact must conclude that the Defendants' proffered reason is believable and that Defendants did not intentionally discriminate against Strickland and Card during the promotion process.[6] *See id.* at 526. Therefore, the court finds that the Plaintiffs have failed to carry their burden of persuasion and summary judgment is due to be granted on the Plaintiffs' promotion claims arising from the 1994 assessment center.[7]

Felton and Turner[8] also claim that the 1996 promotion process was tainted by the Defendants' discriminatory practices. On January 9, 1996, Auburn announced that it would hold an assessment center for lieuten-

---

**6.** The Plaintiffs argue that the Defendants' general minority employment practices provide evidence of the pretextual nature of the Defendants' proffered rationale. *See Sweat v. Miller Brewing Co.,* 708 F.2d 655, 658 (11th Cir.1983). However, the *Sweat* decision is factually inapposite to the situation in this action. The *Sweat* court stated that *"[s]tatistical information* concerning an employer's general policy and practice concerning minority employment may be relevant to a showing of pretext." *Sweat,* 708 F.2d at 658 (emphasis added). However, Strickland and Card do not cite any statistical evidence in support of their argument, but instead, rely exclusively on particular instances of alleged discriminatory incidents. Therefore, the court declines to apply evidence of the Defendants' overall employment practices to the pretextual determination concerning the 1994 assessment center.

**7.** While the Plaintiffs' amended complaint mentions both disparate treatment claims and retalia-

tion claims when discussing the 1994 assessment center, the court can find no mention of retaliation in Strickland and Card's discussion of the 1994 assessment center. Therefore, the court declines to provide any further discussion of a retaliation claim in reference to the 1994 assessment center.

**8.** The court finds that Felton and Turner are the only Plaintiffs who are claiming discrimination resulting from the 1996 assessment center. There is little dispute that Felton seeks to bring a claim based upon the 1996 assessment center; however, Turner's name appears in one portion of the Plaintiffs' response dealing with the 1996 assessment center while Card's name appears in another portion dealing with the same topic. Based upon the citations in both sections of the Plaintiffs' brief, the Plaintiffs' affidavits, and the amended complaint, the court finds that Felton and Turner are lodging a claim against the Defendants over the 1996 assessment center.

ants and captains. Felton and Turner applied to attend the assessment center. On March 18, 1996, Felton and Turner received letters informing them that they would not be allowed to attend the assessment center because they failed to meet the educational requirements for promotion to these positions and would not be allowed to attend the assessment center. These letters closely followed the March 1, 1996, filing of this action. Felton and Turner contend that they were denied an opportunity to attend the 1996 assessment center in retaliation for their participation in the filing of the original complaint in this action.

To establish a prima facie case of retaliation, a plaintiff must show: "(1) that [h]e engaged in statutorily protected expression; (2) that [h]e suffered an adverse employment action; (3) that there is some causal relationship between the two events." *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1021 (11th Cir.1994). The Defendants do not contest Felton and Turner's prima facie retaliation case and the court finds that the test is satisfied. In response to the shifting burden, the Defendants claim that neither Felton or Turner was allowed to attend the assessment center because neither had met the educational prerequisites for promotion. *See Meeks,* 15 F.3d at 1021 ("Once the *prima facie* case is established, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action.").

 Felton claims that this explanation is pretextual since he had completed all the requirements for the required associates degree. *See id.* (explaining that "[t]he plaintiff must then demonstrate that the employer's proffered explanations are a pretext for retaliation; 'the burden shifts, but the burden of persuasion remains with the plaintiff'" (citing *E.E.O.C. v. Reichhold Chems., Inc.,* 988 F.2d 1564, 1572 (11th Cir.1993))). Further, Felton argues that he attended these classes with the Fire Department's complete knowledge since the classes were conducted at the fire station, the Fire Department paid

for Felton's books, Auburn paid overtime to those attending the classes, and a Fire Department employee advised those in the classes. According to Felton, he neglected to pay a fee to receive his diploma and therefore was unable to include a copy of the diploma with his application.

The court finds that Felton has carried his burden and provided evidence showing that the Defendants' proffered reason was pretextual. The Fire Department and Auburn had notice of Felton's degree and their denial of a position at the 1996 assessment center for lack of educational prerequisites was false and provides evidence of intentional discrimination. Therefore, the court finds that Felton's retaliation claim as it applies to the 1996 assessment center should be decided by a jury and that the Defendants' motion for summary judgment on this portion of the Plaintiffs' claim is due to be denied.

 Turner does not argue that he was qualified for promotion to lieutenant. Instead, he claims that he was excluded from the 1996 assessment center by the imposition of the consent decree educational requirements in contravention of the consent decree Career Development Plan. Turner argues that the educational requirements should have been applied during the 1994 assessment center as well as during the 1996 assessment center.[9] He contends that delaying the imposition of the requirements until the 1996 assessment center allowed the Defendants to use the educational requirements as a retaliatory measure in response to the Plaintiffs' lawsuit.

The court is unable to find a link between the Defendants' alleged retaliatory intent and the imposition of the educational requirements as they relate to Turner. The educational requirements are neutral upon their face and require all prospective applicants to fulfill the same training requirements. Turner has not shown the court any link between

9. Neither the Plaintiffs nor the Defendants convincingly point to a specific portion or portions of the consent decree documents which state when or to whom the educational requirements apply. While the documents are unclear, the

court has assumed for purposes of this opinion that the consent decree required that the educational requirement be imposed during both the 1994 and 1996 assessment centers.

the imposition of these requirements and the alleged retaliation against the Plaintiffs.

The court's finding is not meant to suggest that it can envision no circumstances where imposition of such a requirement could demonstrate discriminatory intent. The court is merely finding that Turner has made no such showing in this action. If for instance, Turner had shown that the Fire Department's belated imposition of the educational requirements negatively affected only black Fire Department employees while at the same time providing a benefit to white employees, then the court might find this showing to provide sufficient evidence of discretionary retaliation and allow Turner's claim to proceed to the jury. However, Turner's showing does not reach this level and the court finds that summary judgment is due to be granted for the Defendants on that portion of the Plaintiffs' claim dealing with Turner's 1996 assessment center retaliation allegation.

The Defendants have also moved for summary judgment on the Plaintiffs' sick leave claims. The Plaintiffs claim that they, unlike white firefighters, were required to remain on sick leave for considerable periods following surgery or other medical events while white firefighters were allowed to return to light duty or return to duty based upon the note of a personal physician rather than the official Auburn physician. The Plaintiffs provided the court with a detailed list of incidents which they claim demonstrate the disparate treatment that white and black firefighters receive under the Fire Department's sick leave policy.

While the Fire Department's sick leave policies are not identified as disciplinary rules, the court finds that the prima facie test for discriminatory application of disciplinary rules provides an appropriate prima facie test for the sick leave portion of the Plaintiffs' claim. See Hawkins v. Ceco Corp., 883 F.2d 977, 984 (11th Cir.1989), cert. denied, 495 U.S. 935, 110 S.Ct. 2180, 109 L.Ed.2d 508 (1990). Under the adapted test, the court finds that to prove a discriminatory application of the Fire Department's sick leave policy the Plaintiffs must demonstrate that Defendants treated those white employees who fell under the sick leave policy differently than black employees affected by the policy. See id. at 985 (requiring that comparisons must be based upon "nearly identical" circumstances).

The court finds that the Plaintiffs have provided evidence of discriminatory application of the Fire Department's sick leave policy. The Plaintiffs have provided several examples of white fire fighters who were allowed to return to light duty work while Felton, Strickland, and Turner, in nearly identical situations, were forced to remain on sick leave. The Defendants have not disputed the Plaintiffs' description of this disparate treatment. Therefore, the court finds that the disparate application of the Fire Department's sick leave policy to Felton, Strickland, and Turner satisfies the prima facie test.

The Defendants claim that "[n]o white employees have been allowed to work after being found unfit for duty." This statement satisfies the Defendants' burden to produce a legitimate nondiscriminatory rationale for the alleged discriminatory application of the sick leave policy. However, the Plaintiffs have also shown considerable evidence that the Defendants' explanation is false and that discriminatory intent was the real reason for the discriminatory application of the sick leave policy. See Isenbergh v. Knight–Ridder Newspaper Sales, Inc., 97 F.3d 436, 441 (11th Cir.1996). The court finds that the Plaintiffs have offered enough evidence to raise a reasonable inference that the Defendants' legitimate nondiscriminatory reason was false and that the Defendants acted with discriminatory intent. Therefore, the court finds that the claims of Felton, Strickland, and Turner [10] concerning sick leave policies should be presented to a jury and the Defen-

---

**10.** The court finds no mention of Card suffering from the discriminatory application of the sick leave policy. The Plaintiffs' response brief mentions the other three plaintiffs by name, which strongly suggests that Card does not allege that the discriminatory application of the sick leave policy affected him. Therefore, the court finds that Card should not be allowed to pursue a claim based upon the Defendants' sick leave policy.

dants' motion for partial summary judgment on this point should be denied.

## CONCLUSION

Based on the foregoing analysis, it is CONSIDERED and ORDERED that Defendants' motion for partial summary judgment be and the same is hereby GRANTED in part and DENIED in part. It is further CONSIDERED and ORDERED that the individual Defendants are hereby DISMISSED. The Clerk of the Court is directed to transmit a copy of this Memorandum Opinion and Order by facsimile as well as by United States mail to all parties to this action.