[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-11381

_____

LATHENIA JOY BAKER,

Plaintiff-Appellant,

*versus*

UPSON REGIONAL MEDICAL CENTER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:20-cv-00283-TES

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR, Circuit Judge, and PROCTOR,* District Judge.

PER CURIAM:

## I.  INTRODUCTION

Plaintiff, Dr. LeThenia Joy Baker ("Dr. Baker"), appeals the district court's grant of summary judgment in favor of her former employer, Upson Regional Medical Center ("Upson"). Dr. Baker contends that Upson violated the Equal Pay Act ("EPA") and Title VII of the Civil Rights Act of 1964 ("Title VII") by providing her with a less favorable bonus compensation structure than her male colleague received. Although Upson conceded that Dr. Baker was paid less than her male colleague, it argued that the pay disparity was based on a factor other than sex: the male doctor's greater experience. The male doctor was a board-certified OB-GYN who had been practicing for fifteen years. Dr. Baker was not board certified and had been practicing for less than three years. The district court found that Dr. Baker's EPA claim failed because Upson established an affirmative defense that its bonus structure, which paid Dr. Baker less than her comparator, was based on factors other than sex. As to Dr. Baker's Title VII claim, the district court found that the claim was barred for failure to exhaust administrative remedies. After careful review and with the benefit of oral argument, we affirm.

---

* Honorable R. David Proctor, United States District Judge for the Northern District of Alabama, sitting by designation.

## II.  BACKGROUND

We begin by reviewing the Rule 56 record regarding the hiring and employment of both Dr. Baker and her comparator, Dr. Nicholas Psomiadis. Dr. Baker is a female OB-GYN who attended medical school at Morehouse School of Medicine and graduated in May 2009. After medical school, she completed her residency at Morehouse and Grady Health System in Atlanta. She then worked at St. Francis Hospital in Columbus, Georgia for two years, where she earned a base salary of $200,000.

Dr. Baker began working for Upson in March 2015 under a locum tenens contract. A locum tenens is a physician or provider that comes to a hospital to help with calls or hospital coverage on a temporary basis. Dr. Baker was later hired as a full-time OB-GYN in June 2015. At the start of her full-time employment with Upson, Dr. Baker had two and a half years of experience as a practicing physician, but she did not have any certifications or fellowships.

Dr. Baker's initial employment contract was executed on June 15, 2015. She retained counsel, Arden Miller, to represent her during contract negotiations with Upson. Miller specializes in negotiating physician contracts, which is her sole area of law practice. The negotiations took place between Dr. Baker, Miller, Ronald Barfield (Upson's attorney), and David Castleberry (Upson's CEO at the time).

Under her initial contract, Dr. Baker received a base salary of $260,000 with an increase to $265,000 in the second year, $270,000 in the third year, $275,000 in the fourth year, and $280,000

in the fifth year. Her contract also provided $10,000 for moving expenses, $20,000 as a signing bonus, and $20,000 a year to pay student loans (up to a total of $100,000). During negotiations, Upson originally offered Dr. Baker a base salary of $250,000, but she successfully negotiated this amount to $260,000.

Additionally, Dr. Baker's contract provided incentive compensation based on wRVU levels. A wRVU, or work relative value unit, is a point value assigned to a particular medical procedure or service. wRVU values are set by the Centers for Medicare and Medicaid Services and dictate the amount a hospital can bill. The number of wRVUs assigned to a certain procedure is set by a national standard and it is the same regardless of which physician performs the procedure.

Dr. Baker's initial contract included a bonus structure that compensated her for producing wRVUs above a certain threshold within a contract year the 12-month period beginning on the anniversary date of when the employment contract was executed. Under this bonus structure, she would receive $5 for each wRVU above 6,548, $10 for each wRVU above 7,203, and $20 for each wRVU above 7,923.

Although this compensation plan provided an incentive to produce more wRVUs, it also provided penalties for failing to reach a certain wRVU threshold. If Dr. Baker failed to produce at least 6,548 wRVUs annually, her salary would be reduced.

Dr. Nicolas Psomiadis is a male OB-GYN who was hired by Upson around the same time as Dr. Baker. At the time he began

working for Upson in August 2015, Dr. Psomiadis was a board-certified OB-GYN and had been in practice for fifteen years. During those fifteen years, Dr. Psomiadis had never been sued and never had a fetal demise.

Dr. Psomiadis's employment contract provided for a base salary of $305,000 a yearUnlike Dr. Baker, he was not entitled to annual raises; that is, his base salary remained at $305,000 during the entire five-year term of his contract. Nor did Dr. Psomiadis receive the $20,000 annual student loan reimbursement payment that Dr. Baker earned.

Under his agreement, Dr. Psomiadis also received incentive compensation based on wRVU production, but his compensation was structured differently than Dr. Baker's. Under the terms of Dr. Psomiadis's employment contract, he was only entitled to receive a bonus if he achieved at least 3,990 wRVUs during the first half of his contract year, and at least 7,980 wRVUs during the entire year. If he met those thresholds, he would receive $40 for each wRVU performed in excess of the 3,990 floor amount. This bonus structure was in place during each half of the contract year. Like Dr. Baker, Dr. Psomiadis would face a reduction in salary if he failed to meet his 7,980 wRVU threshold.

In 2017, after she learned about Dr. Psomiadis's compensation structure, Dr. Baker began renegotiating her contract. She retained the same attorney, Arden Miller, to represent her during the negotiations. Ultimately, Upson agreed to a contract amendment that made Dr. Baker's wRVU compensation structure identical to

Dr. Psomiadis's. The amended employment contract was executed on August 23, 2018. Upson represented that the contract amendment would have been executed sooner, but Upson experienced turnover in the position responsible for physician contract negotiations, which caused delay

Upson's corporate representative, Jennifer Thompson, testified about the negotiation of Dr. Baker's initial employment contract and the reasons for the differences in the two doctors' respective bonus structures. Thompson was the director of physician practices at Upson at the time, and she was responsible for facilitating communication between Dr. Baker and Upson throughout their second set of negotiations. She also had conversations with David Castleberry about Dr. Baker's contract and Dr. Psomiadis's contract, including the reasons why the contracts differed.

Thompson testified that Upson relied on Medical Group Management Practices Association ("MGMA") data to set Dr. Baker's base salary. The MGMA maintains a national database that surveys hospitals and practices all over the country and compiles certain data, including physician compensation rates. MGMA data can be filtered by specialty, geographic region, years of specialty, and years of experience, and it can show different percentiles of base salary pay rates based on those categories. According to Thompson, Dr. Baker's base salary reflected the 25th percentile for physicians of similar experience. Likewise, Dr. Psomiadis's base salary was around the 25th percentile for physicians with experience similar to his.

Although Upson relied on MGMA to set base salaries, MGMA does not contain information about average wRVU bonus compensation structures. So, it follows that Upson did not rely on MGMA or any other database when structuring Dr. Baker's wRVU compensation rates.

Thompson testified that the reason Upson offered Dr. Psomiadis a higher base salary and different wRVU compensation structure than Dr. Baker was because Dr. Psomiadis was board certified, had fifteen years of experience, and in those years had never been sued or had a fetal demise. She also stated that Upson believed that Dr. Psomiadis would be a good mentor for Dr. Baker and that it would be "a good relationship in order for a young physician just out of school just starting out to be mentored by someone with so much experience." Additionally, Thompson explained that Dr. Baker's wRVU structure differed from Dr. Psomiadis's because she "was a newer physician[,] and her particular threshold would allow her to become eligible for a bonus at a lower threshold with lower rates while she grew and ramped up her practice."

In the district court, Dr. Baker acknowledged that having a higher wRVU threshold makes it more difficult to become eligible for a bonus. She did not provide data about the actual number of wRVUs she performed during the relevant years, but she did recognize that there were situations in which she would have actually earned less if she were under Dr. Psomiadis's bonus structure because she produced fewer wRVUs. Indeed, during renegotiations of her contract, Dr. Baker stated in an email:

I would prefer to leave my bonus structure tiered. Changing to exactly what [Dr. Psomiadis] has is not beneficial for me because I don't do the volume of ultrasounds that he does in office. For instance, if we take by total RVUs from 2016: 8303, my bonus would have actually been LOWER using this method despite the fact that I am working, well, frankly, a lot more hours, but not necessarily on billable items. In addition, my base salary is lower, so my incentive should start at lower threshold.

Dr. Baker filed suit against Upson on July 14, 2020, asserting claims for employment discrimination under Title VII, 42 U.S.C. § 2000e, and the EPA, 29 U.S.C. § 206. Upson moved for summary judgment on all claims. The district court found that Dr. Baker abandoned her Title VII race and sex discrimination claims and any EPA claim based on anything other her bonus compensation structure. And, the trial court dismissed her Title VII claim regarding her bonus compensation structure, finding that she failed to timely file her EEOC charge, and therefore that her Title VII claim was time-barred.

As to Dr. Baker's EPA claim related to her bonus compensation structure, Upson conceded that she established a prima facie case under the Act, but it asserted an affirmative defense: that the pay disparity was based on a factor other than sex. The district court found that the undisputed Rule 56 evidence established Upson's affirmative defense and, therefore, entered summary judgment in its favor.

### III.  STANDARD OF REVIEW

We review a grant of summary judgment de novo, viewing all facts in the record in the light most favorable to the nonmovant and drawing all inferences in her favor. *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001). However, the court will not make credibility determinations or weigh the parties' evidence. *Id.* Summary judgment is appropriate only when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Id.*

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (internal quotation marks omitted). Upon making this showing, the burden shifts to the non-moving party, who must produce "significant, probative evidence demonstrating the existence of a triable issue of fact" to avoid summary judgment. *Id.* That is, the moving party must demonstrate that, on all the essential elements on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party. *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, "come[s] forward with significant, probative evidence demonstrating the existence of a triable issues of fact." *Four Parcels*

*of Real Prop.*, 941 F.2d at 1438 (alteration in original) (quoting *Chanel, Inc.*, 931 F.2d at 1477); *see also* Fed. R. Civ. P. 56(e).

## IV.  DISCUSSION

This appeal presents two issues: (1) whether the district court applied the correct legal standard in considering Upson's summary judgment motion directed at Dr. Baker's EPA claim, and (2) whether the district court correctly determined that Upson was entitled to summary judgment.

### A.    *Our Circuit's Standard for Analyzing Equal Pay Act Claims*

The EPA prohibits wage discrimination on the basis of sex and "forbids the specific practice of paying unequal wages for equal work to employees of the opposite sex." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir. 1992); 29 U.S.C. § 206(d)(1). The analysis of an EPA claim follows a two-step framework. First, to establish a prima facie case a plaintiff must show "that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974) (quoting 29 U.S.C. § 206(d)(1)); *Brock v. Ga. Sw. Coll.*, 765 F.2d 1026, 1032 (11th Cir. 1985), *overruled on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988). Second, if an EPA plaintiff establishes a prima facie case, "the burden shifts to the employer to prove that the difference in pay is justified by one of the four exceptions in the Equal Pay Act:" (1) "a seniority system;" (2) "a merit system;" (3) "a system which measures

earnings by quantity or quality of production;" or (4) "a differential based on any factor other than sex." *Brock*, 765 F.2d at 1036 (first citing 29 U.S.C. § 206(d)(1); and then citing *Corning*, 417 U.S. at 196). The application of an exception under the Act is an affirmative defense on which the employer bears the burden of proof. *Corning*, 417 U.S. at 196–97; *Gosa v. Bryce Hosp.*, 780 F.2d 917, 918 (11th Cir. 1986) (per curiam).

Both Dr. Baker and the Equal Employment Opportunity Commission in its amicus brief argue that the district court erred in its analysis of Dr. Baker's EPA claim by determining that, after Upson met its burden to establish an affirmative defense, the burden shifted back to Dr. Baker to prove that Upson's explanation for the pay disparity was pretextual. A review of the district court's decision shows that it relied on *Irby v. Bittick*, which states that after a defendant meets its burden of establishing an affirmative defense, "the plaintiff must rebut the explanation by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential." 44 F.3d 949, 954 (11th Cir. 1995). The *Irby* panel cited a prior decision of this Court, *Schwartz v. Fla. Board. of Regents*, 954 F.2d 620, 623 (11th Cir. 1991) (per curiam). Baker and the EEOC contend that the district court should not have relied on this language from *Irby* because "*Irby*'s analytical approach to EPA claims is inconsistent with both the EPA itself and this Court's earlier, controlling precedent."

We agree that *Irby*'s references to a third step in the analysis have created confusion within our Circuit about the correct

standard for analyzing EPA claims. So, we take this opportunity to clarify that the correct standard is the one established in precedent that preceded *Schwartz* and *Irby*.

The proper EPA analysis consists of two parts only; there is no third step. *See Mitchell v. Jefferson Cnty. Bd. of Educ.*, 936 F.2d 539, 547 (11th Cir. 1991) ("The Supreme Court has stated that the EPA consists of two parts, a definition of the violation followed by four affirmative defenses." (citing *County of Washington v. Gunther*, 452 U.S. 161, 169 (1981)). Numerous binding decisions, including decisions by our Court, which all predated *Schwartz* and *Irby*, applied a two-step framework in assessing EPA claims. *See Corning*, 417 U.S. at 195–96; *Hodgson v. Brookhaven Gen. Hosp.*, 436 F.2d 719, 722 (5th Cir. 1970);[1] *Pearce v. Wichita Cnty. Hosp. Bd.*, 590 F.2d 128, 133–34 (5th Cir. 1979); *Brock*, 765 F.2d at 1032–36; *Gosa*, 780 F.2d at 918; *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1568–70 (11th Cir. 1988); *Wu v. Thomas*, 847 F.2d 1480, 1485 (11th Cir. 1988); *Price v. Lockheed Space Operations Co.*, 856 F.2d 1503, 1505 (11th Cir. 1988); *EEOC v. White & Son Enters.*, 881 F.2d 1006, 1009–10 (11th Cir. 1989); *Mitchell*, 936 F.2d at 547.

A third step, assessing pretext, makes no sense in an EPA analysis because that statute, unlike Title VII, does not require proof of intentional discrimination. *Mitchell*, 936 F.2d at 547 ("The plaintiff is not required to prove intentional discrimination, just that

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

the employer pays unequal wages for equal work, as defined in the Act."). Indeed, while EPA and Title VII pay claims are often brought in tandem, there is a significant difference between them as to both their respective elements and their burdens of proof. *Gunther*, 452 U.S. at 170; *Miranda*, 975 F.2d at 1526; *Meeks v. Comput. Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994); *see Brookhaven Gen. Hosp.*, 436 F.2d at 727 ("The purposes of the Equal Pay Act and Title VII of the Civil Rights Act of 1964 are not well served by confounding the respective proofs required of plaintiffs.").

One source of the confusion between the two standards may be our imprecise use of the term "burden of proof," which is notably "one of the 'slipperiest members of the family of legal terms.'" *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005) (alteration omitted) (quoting 2 J. Strong, *McCormick on Evidence* § 342, p. 433 (5th ed. 1999)). "[H]istorically, the concept encompassed two distinct burdens: the 'burden of persuasion,' *i.e.*, which party loses if the evidence is closely balanced, and the 'burden of production,' *i.e.*, which party bears the obligation to come forward with the evidence at different points in the proceeding." *Id.*

Under Title VII, the burden of persuasion remains with the plaintiff at all times. *Miranda*, 975 F.2d at 1528. So, initially, a plaintiff asserting a Title VII pay claim using the familiar *McDonnell Douglas* framework must establish a prima facie case of discrimination by "demonstrating that she is female and that the job she occupied was similar to higher paying jobs occupied by males." *Id.* at 1529. Then, the burden of *production* shifts to the defendant to "articulate

some legitimate nondiscriminatory reason" for the alleged discrimination. *Id.* at 1528 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The defendant's burden to rebut a Title VII prima facie case is "exceedingly light." *Id.* at 1529 (quoting *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983)). And, in this Title VII context, if a defendant cannot articulate a legitimate reason for its decision, the inference of discrimination created by the plaintiff's prima facie case is not dispersed, and that carries the day for the plaintiff. *Perryman*, 698 F. 2d at 1142 (quoting *Burdine*, 450 U.S. 248, 254 (1981)). If, on the other hand, the defendant's proffered reasons "appear legitimate," the burden then "returns to the plaintiff to establish by a preponderance of the evidence that the proffered justifications are actually a pretext for gender-based discrimination." *Miranda*, 975 F. 2d at 1529. But, to be clear, "[u]nder Title VII, the risk of nonpersuasion always remains with the plaintiff." *Meeks*, 15 F.3d at 1019.

In contrast, the EPA "prescribes a form of strict liability." *Miranda*, 975 F.2d at 1533. To establish a prima facie case under the EPA, a plaintiff "must meet the fairly strict standard of proving that she performed substantially similar work for less pay." *Id.* at 1526. Once a plaintiff establishes a prima facie case under the EPA, the "burden of both production *and* persuasion" shift to the employer "to show that the pay differential was justified under one of the Equal Pay Act's four statutory exceptions." *Gosa*, 780 F.2d at 918 (emphasis added). The employer's burden "is a heavy one—the exceptions granted with the EPA constitute affirmative defenses. If proven, [the] defendant is absolved of liability as a matter of law."

*Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 590–91 (11th Cir. 1994) (citation omitted). However, "[i]f the defendant fails, the plaintiff wins. The plaintiff is not required to prove discriminatory intent on the part of the defendant." *Miranda*, 975 F.2d at 1533; *see Meeks*, 15 F.3d at 1018. Once a plaintiff makes out a prima facie case under the EPA, unlike Title VII, "[t]he risk of nonpersuasion is borne by the employer." *Meeks*, 15 F.3d at 1018.

To the extent *Schwartz* and *Irby* contradict the framework outlined above, they are inconsistent with our prior precedent. *See United States v. Dailey*, 24 F.3d 1323, 1327 (11th Cir. 1994) (describing the prior-panel precedent rule, which requires following the earliest decision when "reconciling an intracircuit conflict of authority"). However, we recognize that some of the confusing language in these cases may be a product of the task courts face in assessing the parties' respective (and shifting) burdens on a motion for summary judgment under Federal Rule of Civil Procedure 56. Therefore, an overview of a court's approach in reviewing a summary judgment motion in an EPA case, where usually an employer moves for summary judgment on an affirmative defense, is appropriate.

We "employ a two-part framework of shifting burdens to determine whether, as regards a given material fact, there exists a genuine issue precluding summary judgment." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). But, the parties' respective burdens vary depending on whether the relevant legal issues

are ones on which the movant or non-movant would bear the burden of proof at trial. *Id.*

An employer bears the burden at trial of proving its affirmative defense by a preponderance of the evidence. *Mulhall*, 19 F. 3d at 590. When an employer moves for summary judgment on an EPA claim based on an affirmative defense, the employer "must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Fitzpatrick*, 2 F.3d at 1115 (alteration in original) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc)). "In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *Four Parcels*, 941 F2d at 1438. If an employer meets its Rule 56 burden, the plaintiff must come forward with "significant, probative evidence demonstrating the existence of a triable issue of fact." *Fitzpatrick*, 2 F.3d at 1115 (quoting *Four Parcels*, 941 F.2d at 1438). In the end, the employer will only be entitled to summary judgment if "the combined body of evidence presented by the two parties" is "such that no reasonable jury could find for the non-movant[.]" *Id.* at 1116.

So, in the EPA affirmative-defense context, the question a court must answer is whether the defendant has shown that the evidence is undisputed and that no reasonable juror could find sex was a factor in the pay decision. Of course, a plaintiff need not

stand on the sideline during the court's assessment of whether a defendant has shown it is entitled to judgment as a matter of law on its defense. A plaintiff opposing such a motion is free to point out that there are genuine issues of material fact presented by the Rule 56 evidence and therefore that the question of whether sex was considered is controverted. Thus, though a plaintiff is not called upon under the EPA to prove pretext, once the employer meets its heavy burden of establishing its affirmative defense, a plaintiff may defeat summary judgment by pointing to a genuine dispute of material fact in the Rule 56 record. *Id*. at 1115.

> B.      *The District Court's Grant of Summary Judgment*

In granting summary judgment to Upson, the district court determined that Upson presented "uncontroverted evidence" establishing that sex played no factor in its decision to offer Dr. Psomiadis and Dr. Baker different bonus structures. The court concluded that this uncontroverted evidence satisfied Upson's burden to rebut Dr. Baker's prima facie case, and that a reasonable jury could not find otherwise. Dr. Baker contends this was error because Upson presented "no evidence or justification" for the difference in bonus structures. And, she dismisses Jennifer Thompson's testimony as nothing more than "vague presumptions and half remembrances" from "a person who did not take part in the decision at issue." We disagree.

First, Thompson testified that she had personal knowledge of what occurred during the original negotiations of Dr. Baker's contract because (1) she was responsible for communicating

between Dr. Baker and Upson, and (2) she discussed the negotiations with Upson's decisionmakers—namely Ronald Barfield and David Castleberry. Further, Thompson stated that the reason Upson offered Dr. Psomiadis a higher base salary and a different wRVU compensation structure than Dr. Baker was because Dr. Psomiadis was board certified, had fifteen years of experience, and had never had a fetal demise or been sued. Thompson also explained that Dr. Baker's wRVU structure differed from Dr. Psomiadis's because Dr. Baker "was a newer physician[,] and her particular threshold would allow her to become eligible for a bonus at a lower threshold with lower rates while she grew and ramped up her practice."

It is undisputed that Dr. Psomiadis had more than fifteen years of experience as a physician, while Dr. Baker had less than three. It is also undisputed that in his fifteen years of practice, Dr. Psomiadis had never been sued or had a fetal demise. And, Dr. Psomiadis was board-certified when he was hired by Upson. Dr. Baker was not. Each of these undisputed facts supports Upson's contention that Dr. Psomiadis was paid more because of his greater experience.

It is also undisputed on this record, and Dr. Baker herself has acknowledged, that having a higher wRVU threshold makes it more difficult to become eligible for a bonus. Indeed, according to Dr. Baker, if she received the same bonus structure as Dr. Psomiadis, she may have actually received a lower bonus in certain years. This bolsters Upson's position that her wRVU compensation

structure was designed to allow her to "ramp up" her practice, and not based on her sex.

We acknowledge Dr. Baker's assertion that the hospital bills the same amount per wRVU regardless of whether she or Dr. Psomiadis performed the service. While true, that fact does not create a jury question in this case. Upson does not claim that it chose to pay Dr. Psomiadis more because it expected to earn greater revenue per wRVU for his services. Rather, as Upson explained, it values experienced providers with stellar track records, and it is willing to pay more for them. The fact that Dr. Baker disagrees with this approach is irrelevant because "[u]nder the Equal Pay Act, the courts and administrative agencies are not permitted to substitute their judgment for the judgment of the employer[.]" *Gunther*, 452 U.S. at 171 (cleaned up).

The district court correctly found that "the record provides that [Upson] relied on multiple factors other than sex to set [Dr. Baker]'s bonus structure differently"—"[i]t looked at the two physicians' differing levels of experience, their certifications (or in [Dr. Baker]'s case, lack thereof), their prior production, and it determined that this structure would allow [Dr. Baker] to ramp up her new practice." Upson met its burden of proving that the difference in bonus compensation was based on factors other than sex, that there are no genuine disputes of material fact for a trier of fact to decide, and that no reasonable jury could find in favor of Dr. Baker

on the question of whether her sex was considered in the different bonus structure she agreed to.[2] *C. Dr. Baker's Other Claims*

Dr. Baker originally brought claims against Upson for race and sex discrimination in violation of the EPA and Title VII. At summary judgment, the district court determined that Dr. Baker abandoned her Title VII race discrimination claim and any EPA and Title VII sex discrimination claims other than those based on a disparate bonus compensation structure. The court also dismissed her remaining Title VII claim regarding her bonus compensation structure, finding that she failed to timely file an EEOC charge, and therefore her Title VII claim was barred.

Dr. Baker has not challenged any of these findings on appeal. Therefore, she has "abandoned any challenge of that ground, and

---

[2] The dissent suggests that this court should remand the case to the district court to apply the clarified EPA framework in the first instance. Respectfully, we disagree. The district court's "error" (which again, was occasioned by confusion in some of our decisions) was to proceed to a third (pretext) step in its analysis. It should not have evaluated pretext after finding that Upson had established its affirmative defense based on the undisputed Rule 56 evidence. But, remand is unnecessary because the district court found that "Dr. Baker has not provided *any* evidence to indicate that Defendant set her bonus compensation plan lower than Dr. Psomiadis' because she is a woman. So, the district court held that "[Upson] has provided *uncontroverted* evidence in the record that establishes it offered Dr. Psomiadis a different bonus structure based on factors other than sex such as his greater experience. The Court finds that . . .a reasonable jury could not disagree." On this record, that conclusion was not error and remand is unnecessary.

it follows that the judgment is due to be affirmed." *Sapuppo v. All-state Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

## V.  CONCLUSION

For all these reasons, we **AFFIRM** the district court's grant of summary judgment in favor of Upson Regional Medical Center.

22-11381          Jill Pryor, J., dissenting in part          1

JILL PRYOR, Circuit Judge, concurring in part and dissenting in part:

I agree with much of the majority opinion. For starters, the majority opinion correctly determines that Baker has abandoned her challenge to the district court's grant of summary judgment on her Title VII claims. And by applying our prior panel precedent rule to hold that our decisions in *Irby v. Bittick*, 44 F.3d 949 (11th Cir. 1995), and *Schwartz v. Florida Board of Regents*, 954 F.2d 620 (11th Cir. 1991), improperly added a third step to the two-step framework for evaluating claims under the Equal Pay Act, 29 U.S.C. § 206(d), the majority opinion correctly resolves the confusion these cases have wrought in our Circuit.

But having clarified the standard for evaluating Equal Pay Act claims, the majority opinion misapplies it. In my view, Upson has failed to carry its "heavy" burden. Maj. Op. at 17. At summary judgment, Upson's task was to show that a factor other than sex motivated its decision: that "no reasonable juror could find sex was a factor in [Upson's] pay decision." *Id*. I would vacate the grant of summary judgment in Upson's favor on Baker's Equal Pay Act claim because the evidence, taken in the light most favorable to Baker, does not meet this standard.

I proceed in two parts. First, I describe the burden Upson shoulders at summary judgment. Second, I explain why gaps in Upson's evidence prevent it from carrying this burden.

First, Upson's burden. As the majority opinion observes, the Equal Pay Act imposes "a form of strict liability" on employers. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir.

1992). The Act holds liable an employer who pays an employee "less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs . . . which require[] equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). Once the Act's conditions are met, an employer escapes liability only if it can establish one of four enumerated affirmative defenses. *Meeks v. Comput. Assocs. Int'l*, 15 F.3d 1013, 1018 (11th Cir. 1994).

When it comes to an Equal Pay Act affirmative defense, the employer bears "[t]he risk of nonpersuasion" at trial. *Id*. To prevail on such a defense at the summary judgment stage, an employer "must show *affirmatively* the absence of a genuine issue of material fact." *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original). That showing requires putting forward evidence that, viewed in the light most favorable to the employee allows "no reasonable jury" to side against the employer. *Id*.; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (explaining that "the genuine issue summary judgment standard is very close to the reasonable jury directed verdict standard" (internal quotation marks omitted)).

The majority opinion holds that Upson (the movant) established the Equal Pay Act's fourth affirmative defense: that the pay differential between Baker (the nonmovant) and Psomiadis was based on a "factor other than sex," 29 U.S.C. § 206(d)(1)—namely, Psomiadis's greater experience as an OB-GYN and track record of no fetal demises or lawsuits. To make out that defense, Upson

22-11381          Jill Pryor, J., dissenting in part          3

faced the "difficult" task of showing that "sex provided *no basis* for the wage differential." *Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358, 1362 (11th Cir. 2018) (emphasis in original) (internal quotation marks omitted); *accord* Maj. Op. at 17. Put differently, Upson was required to put forward evidence from which a reasonable jury, drawing all inferences in Baker's favor, would have to conclude that "none of the decision-makers, whether in middle or upper management, were influenced by sex bias." *Bowen*, 882 F.3d at 1362–63 (alteration adopted) (internal quotation marks omitted). It further required Upson to put forward evidence showing that a legitimate factor, such as experience, accounted for the differential, not an illegitimate one, such as race. *See, e.g.*, *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1078 (11th Cir. 2003) (observing that a "general practice" is not a legitimate factor other than sex (internal quotation marks omitted)).

Turning back to this case, recall the specific compensation difference for which Upson's affirmative defense must account. When Baker began working at Upson, it paid her male colleague Psomiadis an additional $40 for each wRVU he produced above 7,980. Baker received $5 for each wRVU above 6,548, $10 for each wRVU above 7,203, and $20 per wRVU above 7,923. Upson had to show that this difference in no way reflected consideration of sex because it was founded on a permissible factor other than sex—and that no reasonable jury could conclude otherwise.

Second, Upson's evidence. In my view, the combined weight of the summary judgment standard and the difficulty of

establishing an affirmative defense under the Equal Pay Act proves too much for Upson's evidence. Upson's motion for summary judgment relied almost exclusively on the deposition testimony and affidavit of its corporate representative: Jennifer Thompson. As Upson's physician practice administrator, Thompson acted as an intermediary between Baker and Upson's decisionmaker, then-CEO David Castleberry, during the negotiation of Baker's contract.

According to Thompson's affidavit and testimony, Upson paid Baker and Psomiadis differently because "Baker was a newer physician and her particular threshold would allow her to become eligible for a bonus at a lower threshold with lower rates while she . . . ramped up her practice." Doc. 36-1 at 2. But in her deposition, when asked how Psomiadis's wRVU compensation plan was determined, Thompson admitted, "I don't know exactly. . . . I don't know how that number came about, but I know we talked about his years of experience and his track record being so good." Doc. 26 at 76. She further testified that Upson had no guidelines or written policies for setting bonus compensation based on wRVUs. And she could not explain how the dollar amounts per-wRVU (ranging from $5-$20 for Baker and $40 for Psomiadis) were set.

Thompson's testimony cannot carry the day for Upson. It does not affirmatively show—such that no reasonable jury could conclude otherwise—that "sex provided *no basis* for the wage differential," as the defense requires. *Bowen*, 882 F.3d at 1362 (emphasis in original) (internal quotation marks omitted). Nor does her testimony show that "none of the decision-makers, whether in

22-11381          Jill Pryor, J., dissenting in part          5

middle or upper management, were influenced by sex bias." *Bowen*, 882 F.3d at 1362–63 (alteration adopted) (internal quotation marks omitted). It could not, because she admitted that she did not know everything the decisionmakers considered when setting Baker's and Psomiadis's respective wRVU compensation plans. After all, Thompson was not the decision-maker; that was David Castleberry, whom she never consulted when preparing for her deposition. And Thompson was unaware of any general Upson policies to which Baker's wRVU compensation could be attributed. At best for Upson, Thompson's testimony shows that Upson considered, as one factor, Psomiadis's experience and track record. Viewing the evidence in the light most favorable to Baker, Upson has not done enough.

Because Upson has failed to carry its heavy burden under the standard the majority opinion correctly describes, I respectfully dissent from its affirmance of the grant of summary judgment to Upson on Baker's Equal Pay Act claim.