**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-10938

Non-Argument Calendar

————————————

NICHOLAS BIRMINGHAM,

*Plaintiff-Appellant,*

*versus*

HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:23-cv-00737-KFP

————————————

Before JILL PRYOR, BRANCH, and KIDD, Circuit Judges.

PER CURIAM:

Nicholas Birmingham appeals the grant of summary judgment to his previous employer, Hyundai Motor Manufacturing

Alabama, LLC, on his disability discrimination and retaliation claims. After careful review, we affirm.

## I. BACKGROUND

From June 2018 through February 2023, Birmingham worked on the engine production line at the Hyundai manufacturing facility in Montgomery, Alabama. Birmingham suffers from chronic asthma and bronchitis, which resulted in him sometimes missing work. By the end of 2022, Birmingham had exhausted his annual Family Medical Leave Act ("FMLA") leave but continued to submit FMLA requests, which were denied. Birmingham faced disciplinary action for his excessive absences and Hyundai ultimately terminated him when he continued to miss work.

Shortly after his termination, Birmingham filed an Equal Employment Opportunity Commission ("EEOC") charge of discrimination that asserted, as relevant here, that he was terminated because he had taken medical time off "directly connected to" his disability "and because [Hyundai] believed that [his] condition was likely to continue to require [him] to miss additional work days." Birmingham contended Hyundai forced him "to sign a commitment letter that subjected [him] to more restrictive scrutiny of" his FMLA leave, which was a basis for his termination. Hyundai responded that it fired Birmingham solely for his excessive absenteeism, and it had no knowledge of Birmingham's disability, nor did Birmingham request accommodations for it. It elaborated that, despite the corrective opportunities presented, Birmingham failed to

provide company-approved coverage for his absences and did not timely return his commitment letter.

In December 2023, Birmingham, through counsel, filed the instant complaint against Hyundai, alleging one count of disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), and one count of retaliation, in violation of the FMLA, 29 U.S.C. § 2615(a)(2). The parties consented to a magistrate judge handling the proceedings under 28 U.S.C. § 636(c) and proceeded to discovery.

Several months later, Hyundai moved for summary judgment. As relevant here, Hyundai argued that Birmingham could not show that he satisfied the essential functions of his job due to his attendance issues and did not demonstrate that Hyundai knew of his disability at the time of termination. It also contended that Birmingham failed to establish that any FMLA-related issues motivated his termination. Hyundai submitted several exhibits in support of its motion, which revealed the following.

Hyundai's 2022 employee handbook required that employees attend 99% of their scheduled workdays, excluding absences covered by approved leave or vacation. Violation of this attendance policy was grounds for disciplinary action. Hyundai also maintained a "Serious Misconduct Policy," that identified certain conduct beyond the bounds of its regular "corrective action" policy and provided for more severe disciplinary action, including termination, in such circumstances. One example of behavior falling under the serious misconduct policy was "[s]erious and/or excessive

violations of [Hyundai's] attendance policy." When an employee violated the serious misconduct policy, but termination was not appropriate, they would receive a "Letter of Conditional Employment" requiring that they return a commitment letter setting out a plan to improve their behavior.

Ta'Lon Brown, Hyundai's Assistant Manager of Investigations, explained that five absences within a fourteen-day period merited issuance of a serious misconduct finding. Employees with a series of absences qualifying as serious misconduct could receive a warning letter, providing them a chance to show that their absences were company-approved. If they failed to do so, employees could be placed on serious misconduct status, or terminated if they were already on such status. Hyundai could terminate an employee on serious misconduct status if they were absent one more time and their attendance had not improved to 99% during a rolling twelve-month period.

On December 9, 2022, Hyundai sent Birmingham a warning letter informing him that its third-party administrator, The Hartford, had denied him FMLA leave for fifteen absences, and it requested that Birmingham provide documentation showing that these absences were covered by company-approved leave. The letter informed him that if he failed to provide such documentation, these absences would count against his 99%-attendance calculation, and it warned Birmingham of the serious misconduct policy and that excessive unexcused absences could result in his termination. When Birmingham failed to timely provide documentation

for many of these absences, the Employment Review Committee ("ERC") made the decision to place him on serious misconduct status.

Hyundai officially placed Birmingham on serious misconduct status on February 1, 2023. Hyundai also gave him a commitment letter to sign and return by the end of his next shift, which was on February 2, 2023, setting out his intent to prevent similar attendance issues. However, Birmingham did not report to work on February 2 due to his health and he was out on pre-approved vacation from February 3 through February 9. Birmingham therefore did not return the signed commitment letter until February 10.

This was too late. Once Birmingham missed work on February 2, Brown prepared an employment review summary for the ERC. And, at a February 16 meeting, the ERC decided to terminate Birmingham because he was on serious misconduct status due to his excessive absenteeism, his attendance rate was lower than 99%, and he accrued an additional unexcused absence. Brown indicated that she received no information regarding Birmingham's disability or that he sought unpaid leave, FMLA leave or other accommodations, and, to her knowledge, no disability or respiratory condition played any role in the decision to terminate Birmingham.

Reginald Williams, Senior Human Resources Manager and sole decisionmaker for corrective actions and terminations for the ERC, reported the same information as Brown. Specifically, he stated that he "made the decision to discharge . . . Birmingham

because [he], while on 'serious misconduct' for excessive absentee-ism and while having an attendance percentage below 99%, also had an additional unexcused absence on February 2, 2023." While Williams indicated that it was "possible" he had access to Birmingham's commitment letter, which stated he missed work due to health issues and was denied FMLA leave, he explained that he did not have information regarding employee-specific health conditions during ERC meetings and did not know of Birmingham's disability.

Birmingham received his termination letter on February 21, 2023. In a deposition, Birmingham testified that he was aware of Hyundai's attendance policies and had online access to the employee handbook, having accessed it at least four times. Birmingham explained that he felt that Hyundai "threatened" his job by placing him on serious misconduct status and asking him to sign the commitment letter when he was suffering from his disability, and he did not know at that time that another unexcused absence within a twelve-month rolling period would cause his termination. However, he also acknowledged that regular onsite attendance was required for his job and confirmed that he did not ask for any other type of leave after exhausting his FMLA leave. He likewise testified that no one told him, nor was he led to believe by management, that Hyundai terminated him due to his disability or his use of FMLA leave. Birmingham further conceded that Hyundai's scrutiny of his attendance was based on absences he accrued after exhausting his FMLA leave, rather than absences covered by approved leave.

Birmingham responded in opposition to Hyundai's request for summary judgment and submitted a document he labeled "Notes of the January 2023 Hyundai [ERC] meeting," which indicated that he "was brought forth by the Medical Review Team" in January 2023 "as a result of excessive absenteeism," submitted several FMLA claims in 2022 that were denied and was at the time "active and reporting to work."

Following Hyundai's reply, the magistrate judge granted its motion for summary judgment. As relevant here, the magistrate judge assumed that Birmingham was disabled but concluded that he failed to establish that he was a "qualified individual" under the ADA. The magistrate judge reasoned that Birmingham's absences showed that he did not satisfy Hyundai's 99% attendance requirement, an essential job function of which Birmingham was aware. The magistrate judge further determined that Birmingham's FMLA retaliation claim failed because, even assuming "that Birmingham could establish that he engaged in a statutorily protected FMLA activity," the record did not support a finding that Hyundai's proffered reason for his termination was pretextual. The magistrate judge reasoned that, although Hyundai's EEOC statement mentioned the failure to timely return the commitment letter, it also reiterated that Birmingham's termination was due to his attendance issues. The magistrate judge further found that the record did not show that Birmingham ever raised concerns about future use of FMLA leave nor did the record support a reasonable inference that Birmingham's delay in returning the commitment letter caused his termination.

The magistrate judge entered final judgment in favor of Hyundai, and this appeal followed.

## II. STANDARD OF REVIEW

"We review a grant of summary judgment de novo, viewing all facts in the record in the light most favorable to the nonmovant and drawing all inferences in" the nonmovant's favor. *Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1316–17 (11th Cir. 2024). "Summary judgment is appropriate only when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law." *Id.* at 1317; Fed. R. Civ. P. 56(a).

## III. DISCUSSION

A. *Summary Judgment Was Proper on Birmingham's ADA Claim*

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). "To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) [he] is disabled; (2) [he] is a qualified individual; and (3) [he] was subjected to unlawful discrimination because of [his] disability." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000). In this case, the magistrate judge determined that summary judgment for Hyundai was appropriate primarily because Birmingham failed at step two. We agree.

A "qualified individual" under the ADA is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such

individual holds or desires." 42 U.S.C. § 12111(8). "[E]ssential functions 'are the fundamental job duties of a position that an individual with a disability is actually required to perform.'" *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1257 (11th Cir. 2007) (quoting *Earl*, 207 F.3d at 1365). "If the individual is unable to perform an essential function of his job, even with an accommodation, he is, by definition, not a qualified individual and, therefore, not covered under the ADA." *Id.* at 1256 (citation modified). While the question of whether a duty is essential is a multifactor, case-by-case determination, we give "substantial weight" to the employer's "official position," including written descriptions in employee handbooks, and the testimony of supervisors. *Id.* at 1257–58; *see* 42 U.S.C. § 12111(8).

We agree with the lower court that Birmingham failed to genuinely dispute that 99% attendance was an essential function of his job, and we are unpersuaded by Birmingham's appellate arguments to the contrary.

Birmingham first contends that Hyundai offered no evidence that his job description mentioned the 99%-attendance policy, or that violation of the rule necessarily disqualifies an employee, given that Hyundai first placed him on a corrective action plan instead of immediately terminating him. However, this argument is belied by the record, as Hyundai's employee handbook specifically stated that employees were required to meet an attendance percentage of 99%. Birmingham confirmed in his deposition that he knew of this requirement and had viewed the employee manual

explaining the attendance policy on multiple occasions. As such, even viewing the evidence in the light most favorable to Birmingham, his own testimony acknowledged that regular attendance was essential to his job. *See Baker*, 94 F.4th at 1316–17; *Holly*, 492 F.3d at 1256–57.

Birmingham further contends there is no record evidence that he was categorically unable to achieve 99% attendance in February 2023, he had no major attendance issues in his first three years with Hyundai, and he followed the attendance policy for two months prior to his termination. But even if Birmingham is correct that his absences did not amount to a categorical failure to meet 99% attendance across these specific periods, this argument still fails to make him an ADA-qualified individual.

An employee who fails to meet an attendance requirement is not a qualified individual even if that employee's work is satisfactory when present. *See Jackson v. Veterans Admin.*, 22 F.3d 277, 278–79 (11th Cir. 1994) (holding that a housekeeping aide failed to show he was a qualified individual where he could not "satisfy the presence requirement of the job" despite being a satisfactory employee when present). Moreover, Hyundai informed Birmingham of his attendance issues at least twice before proceeding with his termination, reinforcing the notion that attendance was an essential function of his job that he failed to perform. *See Holly*, 492 F.3d at 1256.

Finally, Birmingham argues that violating the attendance policy did not necessarily disqualify him under the ADA and that

Hyundai did not clarify which absences pushed him below the 99% threshold. But neither of these arguments point to record evidence from which a jury could conclude that attendance was not essential or that a reasonable accommodation would have solved Birmingham's attendance issues. *Holly*, 492 F.3d at 1256–58; *Jackson*, 22 F.3d at 278–79; *see Earl*, 207 F.3d at 1365–66.

Given that Birmingham could not demonstrate that he was an ADA-qualified individual, we cannot say granting summary judgment to Hyundai on this claim was in error. Because this provides an independent basis for our Court to affirm, we need not address the magistrate judge's alternative determinations regarding Hyundai's lack of awareness of Birmingham's disability and Birmingham's failure to establish causation.

B. *Summary Judgment Was Proper on Birmingham's FMLA Claim*

The FMLA entitles employees to take leave for certain family and medical reasons. *See* 29 U.S.C. § 2612. As relevant to this case, an employee may take up to 12 weeks of leave due to a serious health condition that renders the employee unable to perform the functions of a position. *Id.* § 2612(a)(1)(D). A covered employer may not "interfere with, restrain, or deny" the employee's exercise or attempted exercise of their FMLA rights. *Id.* § 2615(a)(1). To succeed on a claim of FMLA retaliation, an employee must demonstrate that the employer intentionally took an adverse employment action against the employee for exercising an FMLA right. *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1270 (11th Cir. 2017).

On appeal, Birmingham maintains that the language of his conditional employment notice supports an inference that Hyundai would penalize him for further FMLA denials and Hyundai's EEOC statement indicates that his failure to timely return the commitment letter was a cause of his termination. He contends that a jury could find that his reluctance to sign the commitment letter was a reasonable effort to protect his FMLA leave and his termination was therefore retaliatory. We are unpersuaded by these arguments and find that summary judgment was proper because Birmingham failed to show that Hyundai terminated him for any reason related to his FMLA rights. *See Lapham v. Walgreen Co.*, 88 F.4th 879, 895 (11th Cir. 2023), *cert. denied*, 145 S. Ct. 162 (2024).

Although Birmingham exhausted his FMLA leave in 2022, he fails to meaningfully dispute that Hyundai did not base his termination on use of FMLA leave or requests to take such leave. Rather, the evidence at summary judgment, including Birmingham's own deposition testimony and the statements of the relevant decisionmakers, shows that Hyundai based Birmingham's termination on his excessive absences that were not FMLA-approved. *Cf. Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1208 (11th Cir. 2001) ("[I]f an employer can show that it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave, the employer is not liable.").

Therefore, even when viewing the evidence in the light most favorable to Birmingham, we conclude that Hyundai would have terminated him regardless of whether his absences were

25-10938               Opinion of the Court                    13

FMLA-related, and we need not reach the reasonableness of Birmingham's interpretation of Hyundai's pre-termination actions. *See Baker*, 94 F.4th at 1316–17; *see also Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004) (noting that our Court "may affirm a judgment on any legal ground").

## IV. CONCLUSION

We **AFFIRM** the judgment entered in favor of Hyundai.