**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

———————————————

No. 25-12311

Non-Argument Calendar

———————————————

SHA'OLA TERRELL,

*Plaintiff-Appellant,*

*versus*

ALABAMA STATE UNIVERSITY,

THE BOARD OF TRUSTEES OF ALABAMA STATE

UNIVERSITY,

*Defendants-Appellees.*

———————————————

Appeal from the United States District Court

for the Middle District of Alabama

D.C. Docket No. 2:22-cv-00047-RAH-CWB

———————————————

Before JILL PRYOR, BRANCH, and MARCUS, Circuit Judges.

PER CURIAM:

Sha'Ola Terrell appeals the district court's grant of summary judgment in favor of Alabama State University and the Board of Trustees thereof ("collectively ASU") on her claims for sex-based wage discrimination in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206, and the Clarke Figures Equal Pay Act ("CFEPA"), Ala. Code § 25-1-30. She argues that she presents proper comparators to make a prima facie case and that ASU's affirmative defense fails because the budget was discretionary and ASU did not follow the budget. After thorough review, we affirm.

We review de novo a district court's grant of summary judgment, using the same legal standards applied by the district court. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010). Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court must view the evidence in the light most favorable to the non-movant. *Alvarez*, 610 F.3d at 1263–64. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The EPA forbids an employer "paying wages . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which

requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). Exceptions exist for pay determined by: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Id.*

Similarly, the CFEPA prohibits an employer from "pay[ing] any of its employees at wage rates less than the rates paid to employees of another sex or race for equal work within the same establishment on jobs the performance of which requires equal skill, effort, education, experience, and responsibility, and performance under similar working conditions." Ala. Code. § 25-1-30(b). The CFEPA also includes exceptions for pay determined by: "(1) A seniority system. (2) A merit system. (3) A system that measures earnings by quantity or quality of production. (4) A differential based on any factor other than sex or race." *Id.*

We've held that "[t]he analysis of an EPA claim follows a two-step framework." *Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1317 (11th Cir. 2024). "First, to establish a prima facie case a plaintiff must show that an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Id.* (citation modified). To succeed at this stage, the plaintiff must demonstrate that the jobs were "substantially similar" based on the "primary duties of each job." *Arrington v. Cobb Cnty.*, 139 F.3d 865, 876 (11th Cir. 1998),

4                    Opinion of the Court                    25-12311

as amended (May 28, 1998) (citation modified).  The focus is on the jobs themselves, not on the qualities and qualifications of the employees holding those jobs.  *Id.*  Titles are relevant but "the controlling factor in the court's assessment of whether two jobs are substantially equal must be actual job content."  *Id.*  "[A] plaintiff does not have to prove that two jobs are identical . . . ."  *Id.*  The analysis "rests on primary, as opposed to incidental or insubstantial job duties."  *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 592 (11th Cir. 1994).  Positions are not substantially similar, despite performing the same routine tasks, "if the more highly paid job involves additional tasks which (1) require extra effort, (2) consume a significant amount of the time of all those whose pay differentials are to be justified in terms of them, and (3) are of an economic value commensurate with the pay differential."  *Hodgson v. Brookhaven Gen. Hosp.*, 436 F.2d 719, 725 (5th Cir. 1970).[1]

Corporate executive positions are not necessarily substantially similar.  *See Mulhall*, 19 F.3d at 593.  However, we've held that a plaintiff raised a triable issue of fact as to whether a financial controller's position is substantially similar to those of a "vice-president for administration" because the company's "economic well-being is obviously the controller's main responsibility, but he also manages a staff and credit collection and billing -- functions steeped in

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

the administrative tradition.  Meanwhile, monetary concerns permeate all aspects of plaintiff's [vice-president of administration] position."  *Id.* at 594.  Notably, if two positions are substantially the same, no EPA violation occurs if they are paid the same.  *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1051 (5th Cir. 1973).

Second, if an EPA plaintiff establishes a prima facie case, the burden shifts to the employer to prove that the difference in pay is justified by one of the EPA's four exceptions: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based on any factor other than sex.  *Baker*, 94 F.4th at 1317.  The second stage is equivalent to an employer establishing an affirmative defense and requires the employer to show the applicability of that defense by a preponderance of the evidence.  *Id.*; *Mulhall*, 19 F.3d at 590.  "In fact, defendants must show that the factor of sex provided *no basis* for the wage differential."  *Mulhall*, 19 F.3d at 590.  If an employer has established a justification at the second step, "there is no third step."  *Baker*, 94 F.4th at 1318.

Here, none of the potential comparators cited by Terrell occupied a "substantially similar" position and was paid more than her.[2]  As the record reflects, Terrell was paid $75,000 a year.  Terrell's duties as Senior Associate Director of Internal Operations and Senior Woman Administrator ("SWA") included: (1) supervising

---

[2] We apply the same analysis to both the EPA and the CFEPA since its language is virtually identical to that of the EPA.  *Compare* 29 U.S.C. § 206(d)(1), *with* Ala. Code. § 25-1-30(b).

eight divisions in the ASU Athletic Department, including compliance, academic services, business and finance, equipment, operations, human resources, sports medicine, and strength and conditioning; (2) securing donors; (3) negotiating game contracts; (4) making public appearances; (5) liaising with outside parties; (6) advising the Athletic Director; (7) supervising eight sports; (8) attending conference and NCAA meetings; (9) preparing conference and NCAA reports; (10) assisting with student-athlete development and mental health issues; (11) serving as Title IX advocate for student athletes; and (12) creating gender equity plans. Each of Terrell's proposed male comparators were either paid the same as she was or had substantially different job duties.

The first proposed male comparator was Terrance Jones, but there is no genuine dispute that -- although Jones was paid $95,000, which is $20,000 more than Terrell -- Jones's job duties were sufficiently broader and different from Terrell's. As Deputy Athletic Director, Jones assisted the Athletic Director in the overall supervision and implementation of the department, performing more upper-level administrative functions for the entire Department of Athletics that Terrell did. His responsibilities included managing daily operations of athletics programs, assisting with management of day-to-day operations, "providing direct supervision of administrative staff," reviewing and assisting with negotiations for all contracts, providing administrative oversight for sports, developing a program to provide engagement and support for former student-athletes, and representing ASU athletics on ASU, conference, and NCAA committees. Thus, he worked under

a different title, and, crucially, had broader duties explicitly covering *all* contracts, covering *all* athletics programs, *all* day-to-day operations, *all* administrative staff, and *all* sports. In addition, he had unique responsibility for developing a program to provide engagement and support for former student-athletes, which is an extra effort not required of Terrell. Thus, Terrell did not raise a triable issue of material fact as to whether Jones's broader responsibilities rendered their jobs substantially similar.

The next potential comparator is Ronald Brown, who also made $20,000 more than Terrell, but his job function was not substantially similar to Terrell's either. His duties were "overseeing student-athlete academic support," "establishing and maintaining academic and university community networks," and "developing programs that support student-athletes outside of sport." These duties are starkly different from Terrell's, so she has failed to raise a genuine dispute of material fact as to whether her and Brown's jobs were "substantially similar." Moreover, since the emphasis in the EPA and CFEPA on "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions," Terrell's position above Brown in the hierarchy of authority is not dispositive, so long as their job duties were not substantially similar. Thus, Terrell failed to raise an issue of triable fact as to whether Brown was a proper comparator to her under the EPA.

As for the next potential comparator, Derrick Magee, he was paid $75,000 annually for his work as Senior Associate Director for

Business Affairs in the Athletics Department, the same amount as Terrell. Not only is there no genuine dispute that their job responsibilities were different -- since Magee engaged in substantially more front-line work managing the budget and developing forecasts, in negotiating *all* contacts, in overseeing ticketing and vending -- but the fact that they were paid the same prevents Terrell from presenting a prima facie case. Moreover, to the extent that Terrell argues that she should have been paid more than Magee because she had more duties, she did not come forward with evidence showing that her duties required more effort, skill, or responsibility than Magee's overall. Nor did she demonstrate that the duties that were hers and not Magee's "require[d] extra effort," "consume[d] a significant amount of" time, or were "of an economic value" justifying greater pay. *Brookhaven Gen. Hosp.*, 436 F.2d at 725.

The next potential comparator, Lonnie Brown, was also paid the same as Terrell for his work as Head Strength and Conditioning Coach. Yet again, the fact that they were paid at the same rate forecloses any EPA claim. Further, to the extent Terrell argues that she should have been paid more than Lonnie Brown, no evidence was introduced about his job responsibilities, except that they required "special skills in physical fitness of Division I student athletes." Terrell thus failed to establish a prima facie case with respect to him by failing to adduce evidence showing what his primary job duties were, and failed to show, among other things, how her work required more skill, effort or responsibility. And even if his duties can be inferred from his job title and the record, his duties

revolved around coaching student-athletes in general fitness and conditioning and devising programs to assist in student-athlete fitness and conditioning -- duties that were starkly different from Terrell's. Further, as we've noted, even though Brown was one of Terrell's subordinates, that is not dispositive to the EPA analysis.

In short, Terrell did not show that any of her proposed comparators were paid more than her and were doing substantially similar work, and the district court did not err in granting ASU summary judgment on Terrell's claims of sex discrimination under the EPA and CFEPA. Moreover, because we affirm the district court's granting of summary judgment to ASU based on Terrell's failure to make a prima facie case, we need not examine the merits of Terrell's arguments regarding ASU's affirmative defense.

**AFFIRMED.**